UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICHARD A. TRIOLO,

Case No. 3:18-cv-919-J-34JBT

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.
_________________________________/

**DEFENDANT'S MOTION AND MEMONRANDUM TO STRIKE PLAINTIFF'S NON-RETAINED EXPERT WITNESSES**

Defendant, the UNITED STATES OF AMERICA, moves to strike Plaintiff's eight non-retained expert witnesses, pursuant to Rule 26(a)(2) and Rule 37, Fed.R.Civ.P.

FACTUAL BACKGROUND

1. Plaintiff initiated this Federal Tort Claims Act action as a result of a minor traffic accident that occurred on February 11, 2017. Doc. 6 (Amended Complaint).

2. Pursuant to the Case Management and Scheduling Order, Plaintiff's expert disclosure was due on May 8, 2019, Defendant's expert disclosure was due on July 8, 2019, and discovery ends on September 6, 2019. Doc. 11.

3. On May 8, 2019, Plaintiff provided his Rule 26(a) Expert Witness Disclosure. Exhibit A. In his disclosure, Plaintiff identifies one retained expert witness, who is a life care planner, and eight non-retained expert witnesses. Of the eight non-retained expert witnesses, seven witness are physician who have or are treating Plaintiff

for injuries he alleges occurred as a result of the traffic accident and one is the manager of the auto body collision center that repaired his vehicle. *Id*.

4. On July 1, 2019, in anticipation of having a telephone call with Plaintiff's counsel, the undersigned emailed Plaintiff's counsel about several discovery concerns including the Plaintiff's failure to provide compliant disclosures of his non-retained expert witnesses. In the email to Plaintiff's counsel, the undersigned explained that Plaintiff's disclosure of non-retained experts failed to provide the opinions and/or factual basis on which the experts will base their opinions. The undersigned explained that she did not believe the Defendant's obligation to proffer its expert disclosure was triggered until Plaintiff provided compliant expert disclosures. The undersigned then offered Plaintiff's counsel an opportunity to amend his disclosure of his non-retained expert witnesses.

5. In response, Plaintiff's counsel asserts that he has not only met but also exceeded the requirements for disclosing his non-retained expert witnesses. In reply, the undersigned again attempted to explain the opinions and factual support required to comply with the disclosure requirement including providing examples. The undersigned advised that she would call Plaintiff's counsel to discuss these issues.

6. On July 3, 2019, the undersigned contacted Plaintiff's counsel and discussed the deficiencies in Plaintiff's expert disclosure. Plaintiff's counsel stated he would let the undersigned know whether he would amend the expert witness disclosure. On July 8, 2019, Plaintiff again advised that he believed the expert disclosure complied with Rule 26, and that he would not amend the disclosure.

7. Pursuant to Local Rule 3.01(g), the Defendant certifies that it has conferred with Plaintiff's counsel to resolve this matter but is unable to do so.

8. Defendant now moves to strike the Plaintiff's eight non-retained expert witnesses.

**Standard For Imposing Rule 37 Sanctions**

Failure to comply with the Rule 26(a)(2) expert testimony disclosure requirements subjects a party to sanctions under Rule 37(c)(1), which provides, in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed.R.Civ.P. 37(c)(1). Substantial justification "requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact." *In re Denture Cream Prod. Liab. Litig.*, No. 9-2051, 2012 WL 5199597, at *5 (S.D. Fla. Oct. 22, 2012) (internal quotations omitted). Harmless means "an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party," such as "the failure to list as a trial witness a person so listed by another party." *See Rembrandt Vision Technologies, L.P. v. Johnson & Johnson Vision Care, Inc.*, 282 F.R.D. 655, 662 (M.D. Fla. 2012); Advisory Committee Notes, Fed. R. Civ. P. 37(c) (1993 Amendment).

The Court may impose other appropriate sanctions in addition to or in lieu of exclusion. *See* Fed.R.Civ.P. 37(c)(1)(A)-(C). To determine whether exclusion is

warranted, a district court should be guided by the following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1250-1251 (M.D. Fla. 2012) (citing cases).

As the moving party, Defendant has the initial burden of showing a valid basis to strike Plaintiff's expert witness disclosures. *In re Denture Cream Prod. Liab. Litig.*, 2012 WL 5199597, at *4. Plaintiff then bears the burden to show that the failure to disclose was substantially justified or harmless. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009); *Parrish v. Freightliner, LLC*, 471 F. Supp. 2d 1262, 1268 (M.D. Fla. 2006).

Plaintiff has disclosed one retained expert to serve as a life care planner and eight non-retained expert witnesses: 1) manager of auto body repair shop (Michael Cochran)[1]; 2) orthopedic surgeon (Dr. Raymond Topp); 3) pain management physician (Dr. Reynaldo Pardo); 4) three radiologists (Drs. David Priest, Kevin Jones, and Soheil Sooudi); 5) neurologist (Dr. Asad Syed); and 6) chiropractor (Michael McDaniels, DC). The instant motion seeks to strike all eight non-retained expert witnesses. The striking of these non-retained witnesses is the most appropriate remedy for Plaintiff's Rule 26 violations because the violations are neither substantially justified nor harmless.

[1]Michael Cochran was not disclosed in the Plaintiff's Initial Disclosure as a witness likely to have discoverable information.

## ARGUMENT

Because Plaintiff failed to Comply with Rule 26(a)(2)(C), He Should Not Be Permitted to Call Non-Retained Expert Witnesses.

Plaintiff has disclosed eight non-retained expert witnesses who Plaintiff asserts will be called to testify at trial. If a party wishes to present expert testimony from a witness who is not retained or specially employed to provide expert testimony, the party must provide a disclosure that states: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." *See* Fed. R.Civ.P. 26(a)(2)(C). This provision was added to Rule 26 when it was amended in December 2010. *See* Advisory Committee Notes, Rule 26(a)(2)(C) (December 2010). While the required disclosure is "less extensive than the report required by Rule 26(a)(2)(B)," it should include the opinions to be offered by the expert witnesses and "the facts supporting those opinions." *Id.*

The significant problems with Plaintiff's disclosure of his non-retained expert witnesses are that: 1) Plaintiff intends to have non-retained physicians testify to specific causation, prognosis, and future medical treatment; 2) Plaintiff intends to have the manager of the auto body shop opine on the force of the accident; and 3) Plaintiff failed to provide an appropriate summary of the facts and/or opinions to which each witness is expected to testify.

**I. The Type of Specific Causation Opinions, As Well As the Opinions Regarding Prognosis and Future Care and Treatment, Which Will be Offered Require a Rule 26(a)(2)(B) Report**.

Experts disclosed pursuant to Fed.R.Civ.P. 26(a)(2)(C) have certain restrictions on the scope of their testimony. With respect to a treating physician or healthcare provider, such testimony typically is limited "to matters within the scope of observation, diagnosis, and treatment." *Muzaffarr v. Ross Dress for Less, Inc.*, No. 12-61996-Civ., 2013 WL 3850848, at *1 (S.D. Fla. July 26, 2013), *citing In re Denture Cream Prod. Liability Litig.*, 2012 WL 5199597 at *4, and *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317 (11th Cir. 2011). "[W]hen the testimony of the treating physician or provider ventures beyond such matters and includes opinions on causation, prognosis, and/or future implications of the injury, then he or she must provide a full report satisfying the requirements of Federal Rule of Civil Procedure 26(a)(2)(B)." *Muzaffarr*, at *1; *see also Goncharenko v. Royal Caribbean Cruises, Ltd.*, Civil Action No. 16-21461-Civ-Scola, 2017 WL 11220383, at *4 (S.D. Fla. May 18, 2017) (same), *aff'd*, 734 F.App'x 645 (11th Cir. 2018); *Leichtenberg v. Jessup*, Case No. 14-cv-61844-UU, 2015 WL 11197781, at *2 (S.D. Fla. April 14, 2015) (precluding treating physicians from opining as to causation, prognosis, and future implications of plaintiff's injury).

In fact, this Court previously has held that an expert's "opinion regarding the cause of a patient's injuries does not pertain to the patient's treatment" and thus is the type of opinion that requires a Rule 26(a)(2)(B) expert report. *See Ballard v. United States*, No. 3:15-cv-101-J-25MCR, 2016 WL 9560008, at 1 (*citing Williams Mast Biosurgery USA*,

Inc., 644 F.3d1312, 1317 n.4 (11th Cir. 2011) and *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005)).

Notwithstanding the above, Plaintiff's expert witness disclosure states that three of his non-retained physicians (orthopedic surgeon, pain management specialist and chiropractor) will testify to causation or that the Plaintiff's injuries resulted from the traffic accident as well as other issues that seemingly go beyond the scope of their respective treatments. These physicians purportedly will testify that all of Plaintiff's asserted medical conditions—in his cervical, thoracic, and lumbar spines and his headaches—were caused by the February 11, 2017 traffic accident. While it is possible that these physicians determined, as part of their respective treatments, that Mr. Triolo's conditions were not inconsistent with him having been in a motor vehicle accident, this is not the same thing as determining that the accident ***caused*** an injury, in the legal sense. This issue has been well described by now-retired U.S. Magistrate Judge William P. Lynch:

> [P]hysicians are trained to diagnose and treat medical problems without determining causation to a legal standard. Clinical medicine is primarily concerned with the prevention, diagnosis, and treatment of disease. Treating physicians are primarily concerned with making treatment decisions for individual patients based on the information they have at that time. To do so, the physician will gather information by reviewing patient history, performing physical examination, and carrying out diagnostic testing. The cause of a patient's condition is generally of little concern to a treating physician, unless it relates to treatment. A physician's goal is typically not to determine causation, but to recommend the best therapeutic options for his patient. "[W]hen analyzing the patient's symptoms and making a judgment based on the available medical evidence, a physician will not expressly identify a 'proximate cause' or 'substantial factor."' As Professor Faigman explained, "An oncologist might be curious about what caused his or her patient's leukemia, but the doctor's first task is to diagnose and treat the condition, not to determine whether trichloroethylene, electromagnetic

> fields, a genetic disorder, or something else caused it." Testifying about causation "requires making judgments that physicians do not ordinarily make in their profession, making these judgments outside of physicians' customary patient encounters, and adapting the opinion in a way that fits the legal standard."

William P. Lynch, *Doctoring the Testimony: Treating Physicians, Rule 26, and the Challenges of Causation Testimony*, 33 Rev. Litig. 249, 276 (2014),[2] citing extensively to John B. Wong et al., Reference Guide on Medical Testimony, in Fed. Judicial Ctr., Reference Manual on Scientific Evidence 687 (3d ed. 2011), among other sources; *see also Wilson v. Taser Intern., Inc.*, 303 F.App'x 708, 712-713 (11th Cir. 2008) (holding that treating physician did not need to determine how plaintiff was injured in order to treat him).

As Judge Lynch recognizes, "[w]idely divergent views have developed in federal court about what opinions a treating physician normally forms during the course of treatment." Lynch, 33 Rev. Litig. at 273. There are a number of orders, in this District and elsewhere, stating that treating physicians commonly consider causation when treating their patients. *See, e.g., Baratta v. City of Largo*, No. 8:01-CV-1894, 2003 WL 25686843, at *2 (M.D. Fla. March 18, 2003). Judge Lynch's article helps to unwrap this issue, explaining—with assistance from the Federal Judicial Center's Reference Guide on Medical Testimony—that most physicians do not form an opinion on legal causation during treatment. Lynch, 33 Rev. Litig. at 273-277. Many of the cases finding otherwise pre-date the December 2010 amendments or rely on cases that pre-date the amendments.

---

[2] This article also articulates why treating physicians are expert witnesses, and not lay witnesses. Lynch, 33 Rev. Litig. at 254-261, 260 ("The amendment to Rule 701 makes clear that there is no overlap between lay and expert testimony for physicians and that physicians are testifying as expert witnesses whenever their testimony is based on scientific, technical, or other specialized knowledge.").

Defendant respectfully suggests that the view set forth in Judge Lynch's article, and in the Southern District of Florida cases cited above, is more representative of the current state of the law. Moreover, the Eleventh Circuit's recent *Goncharenko* decision implicitly reaffirms the view that causation opinions typically are unrelated to a treating physician's care of his or her patient. *See Goncharenko*, 734 F.App'x at 648.

While Defendant does not assert that treating medical providers never can provide opinions on causation of injuries, the issue is really when such opinions can be offered with only a Rule 26(a)(2)(C) disclosure and when these opinions must be contained in a Rule 26(a)(2)(B) expert report. Defendant agrees that a non-retained expert witness may offer opinions as to causation when those specific causation opinions pertain to the patient's treatment (and not for the purpose of litigation), were based on the expert's personal knowledge (not simply the history provided by the plaintiff), and were necessary to the patient's treatment. But, the reality is that legal causation opinions rarely fall within the scope of a physician's treatment. *See, e.g., Wilson v. Taser Intern, Inc.*, 303 F.App'x 708, 712-13 (11th Cir. 2008)

In *Taser Intern., Inc.*, the district court excluded the testimony of the plaintiff's treating physician that the cause of the plaintiff's injury was exposure to the defendant's product based on its analysis under *Daubert v. Merrell Dow Parm., Inc.* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and granted summary judgment for failing to establish causation. On appeal, the Eleventh Circuit affirmed, agreeing that although "a treating physician may testify as a lay witness regarding his observations and decisions during treatment of a patient, once the treating physician expresses an *opinion* unrelated

to treatment which is 'based on scientific, technical, or other specialized knowledge," that witness is offering expert testimony" which is subject to a *Daubert* analysis. The Court, explaining that the treating physician did not need to reach a causation opinion during the course of treatment, stated:

> In this case, although Dr. Meier was the treating physician, his opinion regarding the cause of Wilson's injuries was not needed to explain his decision making process, nor did it pertain to Wilson's treatment. *See Henderson*, 409 F.3d at 1300 (citing *Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999) ("A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party.") **Dr. Meier did not need to determine how Wilson was injured in order to treat him in this case. Testimony regarding his diagnosis of the injury itself—that Wilson's spine was fractured—would be permissible as lay testimony without the *Daubert* analysis, but his statement about the cause of the injury was an hypothesis. "And the ability to answer hypothetical questions is the essential difference between expert and lay witnesses."** *Id.* (holding that treating physician provided expert testimony where she expressed an opinion on causation where the determination of the cause of the injury did not aid in the treatment thereof) (citations omitted); *see also Daubert*, 509 U.S. at 592, 113 S.Ct. 2786. Dr. Meier's opinions on causation, therefore, clearly fall within Federal Rule of Evidence 702's scope of "scientific knowledge" and must satisfy *Daubert*.

*Taser Intern, Inc.*, 303 F.App'x at 712-713 (emphasis added). While this discussion arises in the context of a *Daubert* analysis, the Eleventh Circuit's discussion that treating physicians can testify as lay witnesses regarding the diagnosis reached and do not need to determine causation to treat the diagnosed condition is instructive in cases in which a party seeks to offer a treating physician's opinion on causation. The Eleventh Circuit's discussion strongly suggests that the need to reach the issue of causation during treatment will be the exception, not the rule, for treating physicians. Thus, to allow a

treating physician to testify regarding causation, a court should require the party offering the causation opinion to provide sufficient factual explanation of the need of the treating physician to reach the causation opinion to justify such testimony without a full Rule 26(a)(2)(B) expert report on the issue.

Thus, determining whether a report pursuant to Rule 26(a)(2)(B) is required or a summary pursuant to Rule 26(a)(2)(C) is sufficient turns on whether the treating physician both needed to reach and did in fact reach the issue of specific causation based on the physician's personal observations pertaining to the patient's treatment. *See Deck v. PetSmart, Inc.*, Case No. 3:16-cv-1517-J-39MCR, 2018 WL 7349248, at *2 (M.D. Fla. July 20, 2018) (stating "[c]onsequently, treating physicians may testify to the patient's injury and diagnosis to help the jury understand the physician's decision making process in treatment *Id*. However, the treating physician may only offer opinions as to cause when necessary for the treatment of the patient, and they may not offer answers to hypothetical questions.") The Eleventh Circuit has made clear that a treating physician's opinion on causation is a hypothesis when it is not based on personal observations pertaining to the patient's treatment. *See Taser Intern, Inc.*, 303 F.App'x at 712-713 (stating "statement about the cause of the injury was a hypothesis."); *Henderson*, 409 F.3d at 1300 (concluding that the treating physician's opinion on causation did not pertain to the [plaintiff's] treatment).

"When a treating physician testifies about his observations, diagnosis and treatment of a patient, the physician is testifying about what he saw and why he did it, even though the physician's treatment and his testimony are based on his specialized

knowledge and training." *Norton v. Schmitz*, Case No.08 C 4365, 2011 WL 4984488, *4 (N.D. Ill May 27, 2011) (citation omitted). "In contrast, when a treating physician opines as to causation, prognosis or future disability, the physician is going beyond what he saw and why he did it." *Id*. Hence, "when a treating physician provides an opinion on 'causation, prognosis, and/or future implications of the injury, then he or she must provide a full report satisfying the requirements of Federal Rule of Civil Procedure 26(a)(2)(B).'" *Goncharenko,* 2017 WL 11220383, at *4 (affirming magistrate judge's order striking expert witnesses), *aff'd*, 734 F.App'x 645. *See also Blakely v. Safeco Ins. Co. of Illinois*, Case No. 6:13-cv-796-Orl-37TBS, 2014 WL 1118071, at *3 (M.D. Fla. Mar 20, 2014) (stating for "additional opinions, beyond those procured directly from treatment ... to be admissible, [pl]laintiff must first provide the full written disclosures required by Rule 26(a)(2)(B)); *In re Denture Cream Prods. Liability Litig.*, 2012 WL 5199597, at *5 (stating "[i]nasmuch as [p]laintiffs' treating physicians are opining on causation—either specific or general—[d]efendants are entitled to full Rule 26(a)(2)(B) reports because such opinions go beyond those arising from treatment.")

Here, Plaintiff has not explained, in his disclosure or elsewhere, the circumstances that led his treating physicians to reach the proffered causation opinions as well as the opinions regarding prognosis and future care and treatment. *Colbert v. United States*, Case No. 3:09-cv-998-J-20JRK, 2013 WL 12159511, at *1 (M.D.Fla. June 4, 2013) (excluding causation opinions from treating physicians for failing to demonstrate how the treating doctor's "causation opinions were necessary for treatment.")(citing *Henderson*, 409 F.3d at 1300). While possible, it seems quite unlikely

that any of these three treating physicians both needed and did in fact determine, as part of their respective treatments, that the conditions for which they were treating Mr. Triolo, much less the type and duration of treatment needed for the remainder of his life, were caused by the February 11, 2017 traffic accident. For example, when Dr. Pardo, the pain management physician, began treating Mr. Triolo in July 2017, he did not need to determine whether the pain that Mr. Triolo reported was caused by this specific traffic accident, much less any other cause, in order to treat him. Likewise, it seems unlikely that Dr. Pardo needed to map out Mr. Triolo's future medical care for the remainder of his life in order to treat Mr. Triolo. When Dr. Topp, the orthopedic surgeon, performed surgery on Mr. Triolo's spine in November 2018, he did not need to determine whether Mr. Triolo's back condition or problems were caused by this specific traffic accident, or some other cause, in order to perform surgery; he simply need to know his diagnosis to treat him.[3]

While the deficiencies in Plaintiff's expert witness disclosures and conclusory nature of the causation opinions as well as the prognosis and future care and treatment opinions therein make it difficult to discern the basis of these opinions, it does not appear that any of them are permissible under Rule 26(a)(2)(C). Plaintiff bears the burden of demonstrating that Rule 26(a)(2)(B) reports are not required. *In re Denture*

[3] According to the report of Plaintiff's life care planner, in April 2019, he contacted Drs. Pardo and Topp to obtain recommendations about Mr. Triolo's future medical needs. Exhibit A at p. 4 of Report of Gil Spruance. It does not appear that these recommendations were part of the doctor's medical file or that these opinions were arrived at as part of Mr. Triolo's treatment by these physicians.

*Cream Prod. Liab. Litig.*, 2012 WL 5199597, at *4. He has made no effort to meet that burden here.

**II. Plaintiff's Rule 26(a)(2)(C) Disclosures Are Not Adequate**.

Even if the scope of the opinions being offered by Plaintiff's non-retained experts was appropriate, the disclosure still does not summarize both the facts and opinions to which these experts will testify. *See, e.g., Reid v. United States*, No. 3:14-cv-420-J-34JRK, 2015 WL 12857077 at *4 (M.D. Fla. July 2, 2015). The disclosure must "include actual and specific opinions, and the factual bases supporting those opinions." *Hinson v. United States*, Case No. 8:18-cv-1499-T-33AAS, 2019 WL 1745373 (M.D. Fla. April 18, 2019). *See also Kondragunta v. Ace Doran Hauling & Rigging Co.*, 2013 WL 1189493, at *6 (N.D. Ga. Mar 21, 2013) (concluding plaintiff failed to comply with Rule 26(a)(2)(C(ii) because "[t]he reader of plaintiff's disclosure has no idea what opinion the doctor will offer or on what facts the doctor will base that opinion."). Further, the Rule 26(a)(2)(C) summary must clarify that the treating physicians will testify based only on their observations that directly pertain to the plaintiff's treatment. *See Reid*, 2015 WL 12857077 at *3 (directing that plaintiff's disclosure must clarify whether the experts will testify only on their opinions pertaining to and formed during plaintiff's treatment.)

"The purpose of the Rule 26(a)(2)(C) requirement is to allow the party in receipt of the disclosure to be able to read the disclosure and immediately be able to identify whether it needs a responsive witness and the information that such responsive witness would need to address." *Cooke v. Town of Colorado City*, No. CV 10-08105, 2013 WL 551508, at *4 (D. Ariz. Feb. 13, 2013). When done properly, these disclosures can

reduce or eliminate the need for depositions, reduce the number of independent medical examinations sought, and reduce the number of experts that defendants need to retain, but Plaintiff's disclosure provides little clarity. There are myriad problems including, but not limited to, the following:

- The summaries with respect to Drs. Topp (orthopedic surgeon) and Pardo (pain management specialist) have a description of the treatment each provided, as well as a list of Mr. Triolo's complaints of pain, and conclusory opinions to which they will testify including "causation of the injury and future treatment." The doctors each state in the signed affidavits that it "shall further supplement [his] opinions set forth in [their respective] medical records." Further, in each affidavit, the doctors describe the course of treatment provided and set forth the conclusory opinions each has reached about the cause of Plaintiff's injuries and the future medical care he will need for the remainder of his life. However, the Plaintiff's summaries fail to provide the facts upon which each doctor will base his opinions. For instance, Plaintiff fails to provide the facts which lead each physician to the opinion that the accident at issue is the cause of Mr. Triolo's condition (*e.g.*, is it simply based on Mr. Triolo's history of the accident at issue, Mr. Triolo's history that he had no pain before the accident, and/or Mr. Triolo's statement that he had no prior or subsequent accidents, etc.) Further, there are no facts demonstrating the need to reach opinions about causation, prognosis, and/or the future care for the remainder of Plaintiff's life, that these opinions pertain to his treatment, and that each doctor did in fact reach these opinions during the course of treatment. Further, because these causation, prognosis and future medical care opinions are based on "scientific, technical, or specialized knowledge," it is subject to a *Daubert* analysis. However, because Plaintiff fails to provide sufficient facts, the Defendant is unable to determine if these opinions meet the *Daubert* standard.

- The summary with respect to Dr. McDaniels, the chiropractor, states that he will testify that the Plaintiff "experience[ed] neck, mid-back, and low back pain as a result of the subject accident." The summary includes a list of the diagnoses, the "modalities and treatment he performed" and that these had limited success in reducing Plaintiff's pain, and the list of restrictions or limitations he assigned to Plaintiff as well as a recommendation to take two weeks off from work in February 2017. Again, the Plaintiff's summary fails to provide the facts upon which he will base his opinions. For instance, the Plaintiff does not provide the

reasons for or facts supporting the doctor's diagnoses, the selection of certain modalities/treatment, the limitations assigned to the Plaintiff, and the recommendation to take off two weeks from work.

- The summary with respect to Dr. Syed (neurologist) states that he diagnosed the Plaintiff with a post-concussion syndrome and impaired cognition, that Plaintiff had certain complaints of pain, and that the "EMG/NCS of Plaintiff's bilateral lower extremities likely represent chronic proximal pathology such as radicular disease as the right L5-S1." Again, Plaintiff provides no facts upon which these diagnoses or opinions are based. For instance, the Plaintiff provides no facts to support the doctor's diagnosis of post-concussion syndrome and impaired cognition or facts to support the "likely" diagnosis of chronic proximal pathology.

- The summary with respect to the three treating radiologists state that they will testify to their findings on the MRI studies they performed including degenerative conditions (*i.e.*, disc desiccation and disc narrowing) at different levels of the spine. However, Plaintiff has failed to provide any opinions, much less facts supporting such, to which the each radiologist is expected to testify.

- The summary with respect to the manager at the auto body shop states that he will testify the impact of the accident was a "hard impact." Not only has Plaintiff failed to present any information to determine this expert witness' qualifications to testify on the issue of force, he has provided no facts to support the opinion that the impact was hard.

As outlined above, the summaries make it difficult for the Defendant to determine the scope of the anticipated testimony and whether it will remain with the bounds appropriate for a Rule 26(a)(2)(C) expert because Plaintiff fails to provide the opinions and/or facts the experts would rely on at trial to support their opinions and/or do not articulate the facts that support their conclusions. Further, Plaintiff fails to demonstrate, or at the very least it is unclear, whether opinions and conclusions about causation, prognosis, and future medical care were necessary for the physicians to provide or pertain to treatment and, thus, formed during treatment or whether these

opinions were prepared in anticipation of litigation. Hence, the summaries of the non-retained experts fail to comply with Rule 26(a)(2)(C).

The Eleventh Circuit has made clear that it will affirm district court orders striking experts due to the failure to comply with Fed.R.Civ.P. 26(a)(2)(C). *See Goncharenko,* 2018 WL 2146441 at *3 (affirming orders striking plaintiff's expert witnesses and granting summary judgment for defendant).[4]

Plaintiff has dismissed Defendant's concerns regarding Plaintiff's expert disclosures and simply asserted that he has met and/or exceeded the requirements of Rule 26(a)(2)(C). But, Plaintiff has provided no factual or legal basis for his position that the expert disclosures are adequate. Plaintiff's Rule 26(a)(2)(C) summaries lack the support for the opinions and/or contain no opinions. Either way, the summaries are deficient and do not comply with Rule 26(a)(2)(C)'s requirements.

## III. Plaintiff's Rule 26(a)(2)(C) violations are neither substantially justified nor harmless.

Because Plaintiff's failure to provide compliant disclosures for his non-retained expert witnesses is neither substantially justified nor harmless, all eight witnesses should be prevented from testifying at trial.

First, the surprise here is substantial. Defendant should be able to read Plaintiff's Rule 26(a)(2)(C) summaries and easily identify, at a minimum, each opinion being

---

[4] The Eleventh Circuit found that Mrs. Goncharenko could not meet her burden as to medical causation both because her experts were stricken and because any statements in the medical records as to the causation of plaintiff's injuries were not admissible under Federal Rule of Evidence 803(4)). 2018 WL 2146441 at *3, quoting from *Gordon v. Wal-Mart Supercenter*, No. 08-527-CG, 209 WL 3850288 at *8 (S.D. Ala. Nov. 12, 2009). It is worth noting that *Gordon* also addresses the causation issue discussed above, finding that treating physicians could not testify about "the cause of the plaintiff's injuries since it is not needed to explain their decision making process nor does it pertain to the plaintiff's treatment." *Id.* at *4.

offered by each expert and the essential facts upon which each of those opinions is based. If Plaintiff had provided this information, Defendant could have determined what facts and opinions were in dispute, how many and what type of experts Defendant needed to retain in order to address said facts and opinions, how many independent medical examinations were needed, and whether to take the deposition of one or more of Plaintiff's experts. *See, e.g., Cooke v. Town of Colorado City*, No. CV 10-08105, 2013 WL 551508, at *4, 5 (D. Ariz. Feb. 13, 2013). Without this information, Defendant has been left to guess as to what precisely Plaintiff is asserting and/or why.

Inadequate disclosures inherently lead to surprise at trial. What happens is fairly predictable: Plaintiff will continue to receive medical care from his treating physicians. Plaintiff's counsel will call the treating physicians as witnesses at trial and will elicit a variety of opinions. Among these will be opinions developed for litigation and opinions not included in the physicians' medical records. Defendant will hear these opinions, and their supporting factual bases, for the first time during the physician's direct examination but, at that point, Defendant will have no meaningful ability to respond. It will be too late to confer with an expert regarding appropriate cross-examination, too late to retain an expert to address the issue through a report, too late to obtain an independent medical examination, too late to properly evaluate whether the opinion is the type that requires a Rule 26(a)(2)(B) report, and too late to determine whether the opinion satisfies the standards set by Federal Rules of Evidence 702 and *Daubert*. This is not the way the rules are intended to function.

Second, Defendant has no reasonable way to cure the surprise. Only Plaintiff knows what testimony he intends to elicit from his expert witnesses, which is why Plaintiff is responsible for preparing his own expert witness disclosure. If Plaintiff's experts are permitted to testify based upon the current inadequate and overly broad disclosures, Defendant will be forced to spend vast amounts of time and money to attempt to limit the surprise that will result at trial, but there is no way to cure it. While Defendant can review medical records and spin its wheels guessing at the opinions and/or reasons for the opinions, can hire multiple expert witnesses to try to address the issues Plaintiff may raise, can request multiple independent medical examinations to help evaluate his condition and complaints, and can depose each non-retained expert, none of this is an efficient and productive use of the Defendant's resources and/or time.

Third, allowing Plaintiff to present the testimony of the non-retained experts based on the current disclosures will disrupt the trial. Defendant will object to any testimony by these experts when it exceeds the bounds of the disclosures. For instance, any attempt to elicit opinions when none have been disclosed or to elicit the factual bases supporting the conclusory opinions will go beyond the disclosure of expected testimony.

Fourth, having a compliant expert witness disclosure is not only important but is critical to Defendant. Without appropriate expert disclosures, Defendant cannot adequately prepare for cross-examination of these witnesses and/or to counter the testimony with that of its own witnesses.

Last, at this point, Plaintiff's only explanation is that he has not failed to disclose appropriate and compliant expert witness disclosures. Rather, Plaintiff continues to assert that the disclosure meets and/or exceeds the requirements of Rule 26(a)(2).

In light of the above, the Court should exclude Plaintiff's non-retained expert witnesses. Defendant has met its burden of showing a valid basis to strike the experts by demonstrating that Plaintiff has not complied with Fed.R.Civ.P. 26 (a)(2). Plaintiff cannot meet his burden of demonstrating that the failure was substantially justified or is harmless. Moreover, exclusion is warranted under the factors above.

**CONCLUSION**

Based upon the foregoing citations of authority and arguments, Plaintiff has failed to comply with the requirements of Rule 26(a)(2)(B) and/or 26(a)(2)(C). Plaintiff's failure to comply with Rule 26(a)(2)(B) and 26(a)(2)(C) has prejudiced the Defendant and impeded the progress of this litigation. Plaintiff's conduct is neither substantially justified nor is it harmless. Pursuant to Rule 37(c)(1), the Court should exclude the testimony of all eight of Plaintiff's non-retained expert witnesses. Hence, Defendant respectfully requests that the Court grant the instant motion.

Dated: July 9, 2019

Respectfully Submitted,

MARIA CHAPA LOPEZ
United States Attorney

*/s/Ronnie S. Carter*
RONNIE S. CARTER
Assistant United States Attorney
Florida Bar No. 0948667
United States Courthouse
300 North Hogan Street, Suite 700

Jacksonville, Florida 32202-4270
Telephone No. (904) 301-6283/6300
Facsimile No. (904) 301-6310
Email: Ronnie.Carter@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of July, 2019, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participant(s) listed below:

Benjamin C. Moore, Esquire
Philip S. Kinney, Esquire
Kinney & Sasso, PLLC.
9191 RG Skinner Parkway, Suite 703
Jacksonville, FL 32256-9678

*/s/Ronnie S. Carter*
RONNIE S. CARTER
Assistant United States Attorney