UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE

RICHARD A. TRIOLO

      CASE NO.: 3:18-cv-00919-MMH-JBT

    Plaintiff,

vs.

UNITED STATES OF AMERICA,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO STRIKE PLAINTIFF'S NON-RETAINED EXPERT WITNESSES**

Plaintiff, RICHARD A. TRIOLO, by and through his undersigned counsel, and pursuant to Rules 26(a)(2) and 37, Fed. R. Civ. P., submits his Response and Memorandum of Law in Opposition to Defendant's Motion and Memorandum to Strike Plaintiff's Non-Retained Expert Witnesses and states as follows:

**BRIEF PROCEDURAL AND FACTUAL SUMMARY**

1. This case arises from a rear-end motor vehicle collision which occurred on November 3, 2017. [Doc 6 - Amended Complaint]. The collision was caused by a United States Post Office ("USPS") employee in the course and scope of her employment with USPS. As a result of the collision, the Plaintiff sustained a significant injury to his lumbar spine. The Plaintiff has undergone a lumbar spinal fusion to help alleviate his symptoms, along with other invasive and non-invasive medical treatment.

2. The Plaintiff timely submitted a claim for personal injury with the USPS which was denied. Id. Thereafter, the instant lawsuit was filed pursuant to the Federal Tort Claims Act.

1

3. A bench trial is set for March 2, 2020. [Doc. 11 - Case Management Order]

4. On May 8, 2019, the Plaintiff timely served his Rule 26(a) expert witness disclosures. <u>Exhibit</u> "A". Plaintiff disclosed one retained expert witness, Gil Spruance, a vocational rehabilitation expert and life care planner. In addition, the Plaintiff disclosed as non-retained experts seven treating physicians and the motor vehicle repair shop foreman.

5. On July 9, 2019, Defendant filed its Motion to Strike all eight of the Plaintiff's non-retained experts. [Doc 14]. The Defendant's Motion to Strike asserts two arguments that are without merit. First, the Defendant contends that the treating physicians' testimony as to causation of injury, prognosis, and future medical care require a Rule 26(a)(2)(B) report. Second, the Defendant asserts that the Plaintiff's extensive summative of the facts contained in the disclosure is somehow not enough.

6. As to the Defendant's first argument, the Plaintiff's treating physicians shall testify based upon their longstanding doctor-patient relationship with the Plaintiff. During said relationship, the physicians have taken a personal and medical history, examined diagnostic studies, performed physician examinations, provided treatments and observed the Plaintiff's responses to treatments. Their opinions as to causation, prognosis, and future care and treatment are derived directly from their personal knowledge of the Plaintiff in the normal course and scope of the practice of medicine on a patient. Accordingly, they do not fit within the ambit of Rule 26(a)(2)(b).

7. As to the Defendant's second argument, the Plaintiff provided an exhaustive summary of facts and opinions for each non-retained expert. The assertion by USPS that it is not enough is simply without merit. As such, Defendant's Motion to Strike should be denied.

## MEMORANDUM OF LAW AND ARGUMENT

**I. Plaintiff has complied with the disclosure requirements set forth in Rule 26(a)(2)(C) by providing a detailed summary of the non-retained experts' opinions and underlying facts supporting those opinions.**

Rule 26(a)(2)(A) provides "[a] party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703 and 705." In addition, Rule 26(a)(2)(C), provides that non-retained expert witnesses are not required to provide a written report. Instead, the party that discloses a non-retained expert is required to disclose: (i) the subject matter(s) on which the witness is expected to present evidence; and (ii) a summary of the facts and opinions to which the witness is expected to testify. This disclosure is significantly different that the report required by Rule 26(a)(2)(B). The 2010 Advisory Committee Notes warns:

> Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have.

The instant case is strikingly similar to Hinson v. United States, 2019 U.S. Dist. Lexis 111022, *9 (M.D. Fla. July 3, 2019).[1] In Hinson, the plaintiff was injured in a motor vehicle collision caused by a USPS driver. Id. at * 1. USPS moved for summary judgment on the issue of causation of injury. Id. at * 5. In support thereof, USPS took the position that the disclosure of Hinson's treating physicians were insufficient to testify as to causation, and Hinson could not offer any other evidence in support of causation. Id. As well, USPS moved in limine to preclude the treating physicians from testifying as to causation at trial. Id. In relevant part Hinson's disclosures

---

[1] Although the Defendant string cited Hinson in its Motion to Strike for a general proposition, the Defendant did not include any mention of the Court's holding which stands in opposition to the positions taken by the Defendant in its Motion.

included the following:

> Dr. Heldreth. It is anticipated that, based only upon his examination and treatment of [Hinson], Dr. Heldreth will opine that the care and treatment provided at Total Vitality Medial Group for those injuries was reasonable, necessary and related to the motor vehicle collision.
>
> Dr. Bansal. It is anticipated that, based only upon his examination and treatment of [Hinson], Dr. Bansal will opine that: [Hinson] suffered personal injuries to his right shoulder and right knee as a direct result of the subject incident; [Hinson] suffered aggravation of preexisting medical arthritic condition of his right knee as a direct result of the subject incident; … and the care and treatment [Hinson] received by Dr. Bansal for those injuries and aggravations were reasonable, necessary and related to the injuries sustained in the motor vehicle collision.
>
> Dr. Weber. It is anticipated that, based only upon his examination and treatment of [Hinson], Dr. Weber will opine that: [Hinson] suffered personal injuries to his cervical spine and lumbar spine as a direct result of the subject incident, including but not limited to cervical myelopathy and is at risk for a devastating neurologic injury; … and the care and treatment [Hinson] received by Dr. Weber for those injuries were reasonable, necessary and related to the spinal injuries sustained in the motor vehicle collision.

Identical to the instant case, USPS argued that these disclosures "failed to sufficiently provide 'a summary of facts and opinions to which the witness is expected to testify'". Id at 10. However, the Middle District Tampa Division, rejected USPS' arguments.

> [U]pon review of the summary of facts and opinions for each physician, the Court believes that the second amended disclosures are sufficient for Dr. Heldreth, Dr. Weber and Dr. Banal. This is not a situation in which the disclosure merely contains broad, general information on the treating physician and his planned testimony.
>
> Id. at 11.
> …
>
> [The] descriptions in Hinson's second amended disclosures are thorough and provide a clear picture of the treatment each physician provided, what materials each physician reviewed, and the opinions each physician plans to offer at trial.

4

<u>Id</u>. at 12 – 13.  In comparing the disclosures in <u>Hinson</u> to the Plaintiff's disclosures in the case at bar, it is clear that USPS' arguments should fail once again.  By way of example, the Plaintiff's disclosure for the treating surgeon, Dr. Raymond Topp, included the following:

> **Subject Matter**: Dr. Topp is a board-certified orthopedic surgeon who will testify as to his treatment on the Plaintiff's lumbar spine, and his performance of a posterior lumbar interbody fusion surgery ("PLIF") on the Plaintiff at L5-S1 due to his injuries from the subject accident. His opinions are attained directly from his treatment of the Plaintiff, and his opinions pertaining to causation of the injury and future treatment are described in his affidavit … He will testify pertaining to the Plaintiff's pain, injury, cause of injury, surgery performed on Plaintiff, follow up condition of Plaintiff after surgery including his home health care, the status of his fusion as demonstrated in the 8-30-18 MRI of Plaintiff's lumbar spine, Plaintiff's resulting limitations, present and future impairment, future need for treatment as well as future expected limitations.
> **Summary of Facts and Opinions**: Dr. Topp will testify he initially saw the Plaintiff on November 8, 2017 and recommended surgery.  He will testify on March 22, 2018 he performed an L5-S1 posterior lumbar interbody fusion surgery due to Plaintiff's pain which was not being relieved by other chiropractic and pain management treatment and modalities.  Subsequent to the surgery, he will testify that Plaintiff experienced complications and ongoing pain, and Dr. Topp administered an L5-S1 epidural steroid injection in September 2018 which was not beneficial.  Dr. Topp will testify that the injuries to the Plaintiff's lumbar spine were caused by the subject accident.  He will testify that the injuries to his lumbar spine are permanent in nature. He will also testify that the injuries to his lumbar spine did not pre-exist the subject accident. He will testify that the L5-S1 fusion was reasonable and related to the injuries Plaintiff received from the subject accident. He will also testify that the Plaintiff will need a future lumbar fusion extension as a result of the accident, and that the Plaintiff will need a follow up visit to an orthopedic physician at least one time per year with x-rays as stated in [his affidavit]. He will testify to the findings of the imaging and x-rays of the Plaintiff's lumbar spine prior to the surgery.  He will testify as to the current condition of the Plaintiff's lumbar spine as displayed in the 8-30-18 MRI which shows the prior PLIF without complications, a T12-L1 disc herniation indenting the thecal sac with high signal annular fissure, enhancing fibrosis within right lateral recess and neural foramen at L5-S1. He will also testify that the Plaintiff has an SI joint dysfunction secondary to surgery which is permanent in nature. He will also testify

>as to writing a leave of absence excuse for Plaintiff post-surgery for several weeks. His testimony will be based upon his treatment of the Plaintiff as described in his medical records, medical bills, and his affidavit.

As is evident from the disclosure, it is clear that the Plaintiff thoroughly described Dr. Topp's role as a treating surgeon, his assessment of the failure of pre-surgical conservative care, his recommendation for surgical repair of the Plaintiff's lumbar spine, the surgery performed, his post-surgical treatment, the future treatment Dr. Topp expects to occur, the cause of the injury and the basis for his testimony being his personal treatment of the Plaintiff. Certainly, it cannot reasonably be disputed that the Plaintiff's disclosures go far beyond the disclosures in Hinson. Accordingly, for Dr. Topp, the Plaintiff has satisfied the requirements of Rule 26(a)(2)(C). Further, the Plaintiff was equally descriptive in the disclosure of the remaining non-retained expert witnesses.

For the reasons stated, the Court should deny the Defendant's Motion to Strike Plaintiff's Non-retained experts pursuant to Rule 26(a)(2)(C).

## II. **Plaintiff's non-retained experts are not required to provide a written report pursuant to Rule 26(a)(2)(B).**

The Defendant argues that Plaintiff's seven non-retained experts were required to provide Rule 26(a)(2)(B) reports. Their argument being that testimony as to causation, prognosis and future treatment re-classifies the non-retained experts to retained experts. However, Rule 26(a)(2)(B) does not apply to the Plaintiff's non-retained expert witnesses. Rule 26(a)(2)(B) requires experts to produce a report only when an expert is retained or employed to "provide testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."

When a treating doctor testifies as to causation of injury, it does not trigger the requirement of a report pursuant to Rule 26(a)(2)(B). Baratta v. City of Largo, 2003 U.S. Dist. Lexis 27628 *6 (M.D. Fla. 2003). A treating physician is not reclassified as a retained expert if the physician testifies about observations based on personal knowledge and treatment of the patient. Principi v. Survivair, Inc., 231 F.R.D. 685, 692 (M.D. Fla. 2005) (opining that a treating physician's diagnoses and prognosis testimony is lay opinion testimony subject to Rule 701).

In Baratta v. City of Largo, the plaintiff did not list a treating provider on an expert disclosure and did not have the treater submit a Rule 26(a)(2)(B) report. Id. at * 1. The defendant moved to prohibit "causation" testimony from the treating physician for failure to timely disclose and failure to provide a report pursuant to Rule 26(a)(2)(B). Id. at * 1. The court found that the failure to list the treater in an expert witness disclosure was excusable given informal but specific written disclosures provided. Further, the Middle District (Tampa Division), held that a Rule 26(a)(2)(B) report was not required to allow "causation" testimony from the treater.

> Because a treating physician considers not only the plaintiff's diagnosis and prognosis, opinions as to the cause of injuries do not require a written report if based on the examination and treatment of the patient. Testimony as to causation of an injury is not 'expert testimony' that requires expert disclosures under Rule 26. Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extend of disability, if any, caused by the condition or injury. [Internal citations omitted].

Id. at * 6 – 7.

In *Bach-Tuyet*, 2017 U.S. Dist. LEXIS 68330 (S.D. Fla. 2017), the Southern District held that a general practitioner was permitted to testify as to causation of injury in a trip and fall case. Id. at 18. At deposition, the treater stated she "needed to know what caused the fall …." Id. The

7

Court reasoned that causation testimony was permissible because causation was part and parcel of the practitioner's treatment of her patient. Id.

> **A.  Drs. Topp and Pardo are permitted to testify as to causation of injury, future prognosis and future treatment as a Rule 26(a)(2)(C) lay witness without being required to provide a written report.**

In the case at bar, Plaintiff specifically set forth that both Drs. Topp and Pardo would testify based upon their treatment of the Plaintiff, and that their opinions were attained directly from their treatment. Exhibit "A". In relation to Mr. Triolo's orthopedic surgeon Dr. Topp, Plaintiff disclosed:

> Subject Matter: Dr. Topp…will testify as to his **treatment on the Plaintiff's lumbar spine**, and his performance of a posterior lumbar interbody fusion surgery ("PLIF") on the Plaintiff at L5-S1 due to his injuries from the subject accident. His opinions are **attained directly from his treatment of the Plaintiff**, and his opinions pertaining to causation of the injury and future treatment are described in his affidavit….

Further, attached to the disclosure is the Affidavit of Dr. Topp. Therein he attested his testimony was based upon his treatment of and surgery on the Plaintiff. See Topp Aff. at para. 3 attached to Exhibit A.

In relation to Mr. Triolo's pain management physician Dr. Pardo, Plaintiff disclosed:

> Subject Matter: …His opinions are **attained directly from his treatment of the Plaintiff** and his review of the Plaintiff's medical records. His opinions pertaining to causation of the injury and future treatment are described in his affidavit….

An affidavit from Dr. Pardo was attached to the expert disclosures in which he attested his testimony was based upon his treatment of the Plaintiff. See Pardo Aff. at para. 3 attached to Exhibit A.

Drs. Pardo, Topp, Priest, Jones, Sooudi, Syed, McDaniels and the repair foreman are not

giving additional opinions beyond those procured directly from their personal knowledge. Further, Drs. Pardo and Topp's opinions as to causation of injury, future prognosis and future medical treatment were derived directly from their treatment of the Plaintiff as they stated in their affidavits and as was described in the disclosures.

Defendant relies primarily on three cases in arguing that Plaintiff's treating physicians should not be allowed to testify regarding causation and future damages without a full Rule 26(a)(2)(B) expert report. The first is Wilson v. Taser, Int'l, Inc., 303 Fed. Appx. 708 (11th Cir. 2008). In Wilson, the court would not allow a treating physician to testify that exposure to a TASER device caused the patient's spinal compression fractures. However, this holding is quite distinguishable from the case at bar. First, it is significant that the Wilson court did not hold that a non-retained treating physician can never testify as to causation. Quite the contrary, implicit in its decision is that it is common for treaters to testify as to causation. But, under the specific odd circumstances in which Wilson was injured, a causation opinion was not the natural consequence of the treatment.

> Although a doctor usually may primarily base his opinion as to the cause of a plaintiff's injuries on his history where the plaintiff 'has sustained a common injury in a way that it commonly occurs, a compression fracture of the spine is not the type of injury which commonly occurs from shock by a TASER.

Id. at 16.

> [T]he inference that a shock by a TASER can and did cause compression fractures in David Wilson's spine is not a natural inference that a jury could make through human experience."

Id. at 19.

In the case at bar, the Plaintiff suffered a low back injury from a rear-end motor vehicle collision. The circumstances surrounding the Plaintiff's injury is not new or novel. Accordingly,

9

the Wilson holding is not persuasive.

Defendant also relies upon Deck v. PetSmart, Inc., Case No. 3:16-cv-1517-J-39MCR (M.D. Fla. July 20, 2018) for the proposition that a "treating physician may only offer opinions as to cause when necessary for the treatment of the patient, and they may not offer answers to hypothetical questions." Id. at Doc 28, pg 4. However, this case is misapplied as well. Deck involved the failure of the plaintiff's attorney to timely disclose the treating physicians' testimony as to causation. Id. at * 4. Further, the court stated:

> To the extent that Defendant would be prejudiced by the nondisclosure of the treating physicians' reports, which omitted causation relating to the treatment of the patient, Defendant conceded at the hearing that such prejudice is curable at trial through Defendant's own expert witness testimony.

Id. at 4 – 5.

Finally, Defendant cites to Maluff v. Sam's East, Inc., 2017 U.S. Dist. Lexis 186335 (S.D. Fla. 2017). Maluff is also distinguishable. Therein the Court specifically found that the treating physician "neither considered nor relied on the cause of Maluff's injuries to prescribe treatment." Id. at 8.

Both Drs. Topp and Pardo should not be required to prepare a written report since their opinions as to causation, future prognosis and future medical treatment was derived from their treatment of the Plaintiff and the injury sustained was a common injury that resulted from a common occurrence. "A doctor usually may primarily base his opinions as to the cause of a plaintiff's injuries on his history where the plaintiff has sustained a common injury in a way that it commonly occurs." Bach-Tuyet Chau at *26. Both Drs. Topp and Pardo attested that they examined the Plaintiff and performed a diagnosis and concluded the collision caused his injuries

and he had no similar pre-existing injuries. "Examining patients, taking a medical history, reviewing x-rays and concluding that [plaintiff's] injury was caused by her then-recent fall is consistent with techniques that have been generally accepted in the proper scientific community." Id. at *28.

### III. Defendant has failed to meet its burden of showing a valid basis to strike Plaintiff's non-retained expert witnesses and Rule 37 sanctions are not appropriate.

The decision to exclude evidence of an expert's testimony is a "drastic sanction." Barrata at *5. As the moving party, Defendant bears the initial burden of proving there's a valid basis for the Court to strike Plaintiff's expert witness disclosures. Blakely v. Safeco Ins. Co. of Ill., 2014 U.S. Dist. Lexis 36720, at *6 (M.D. Fla. 2014). In the event the Court determines there is a valid basis to strike Plaintiff's expert witness disclosures, exclusion of a witness is not automatic. Bach-Tuyet Chau, at *13. The Court must first determine whether there was substantial justification for the failure to disclose or whether the failure to disclose was harmless. Id.

Courts usually consider four factors in making a determination whether to exclude a witness: (1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice. Id.

All four factors weigh in favor of the Plaintiff in the subject case and as such, Plaintiff's non-retained treating physicians should not be excluded from testifying on behalf of Plaintiff. The treating physicians' testimony is critical to Plaintiff's ability to establish a prima facie case. Plaintiff provided detailed disclosures in a timely manner. There has been no prejudice to the Defendant in that prejudice normally "occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or

witnesses in question." Id.

This is not a situation where Plaintiff failed to disclosed experts, was late disclosing experts, or where Plaintiff gave broad, generalized disclosures of expert opinions and left the Defendant to speculate about the opinions. Defendant had enough information enabling Defendant to depose the non-retained treating physicians and further inquire as to their opinions.

In Bach-Tuyet, the Court pointed out that the Defendant had not identified what prejudice would occur if the witnesses were allowed to testify, and why any such prejudice was not cured when the witnesses were deposed regarding their opinions. Id. *at* \*14. Similarly, Defendant fails to point out the prejudice that has occurred to Defendant, and any such prejudice could have and still could be cured by taking the treating physicians' depositions.

Defendant has failed to meet their burden of showing a valid basis to strike Plaintiff's non-retained treating physicians. Even assuming the disclosures provided by the Plaintiff did not fully comply with the disclosure requirements of the Federal Rules of Civil Procedure, that failure is relatively minor and any prejudice regarding that failure can be cured with ample time to complete discovery before the discovery cutoff date of September 6, 2019.

WHEREFORE, Plaintiff Triolo respectfully requests this Court deny the Defendant's Motion to Strike in its entirety.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 23, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties listed in the service list via transmission of Notices of Electronic Filing generated by CM/ECF.

Ronnie S. Carter, Esq.
Assistant United States Attorney
Trial Counsel
United State Courthouse
300 North Hogan Street, Suite 700
Jacksonville, FL 32202-4270
Primary: Ronnie.Carter@usdoj.gov
Secondary: Nicole.Schmidt2@usdoj.gov
  Chantal.Sabino@usdoj.gov
  Brittany.Robinson2@usdoj.gov
  <u>jaxdocket.mailbox@usdoj.gov</u>


By:/s/*Benjamin C. Moore*
  Benjamin C. Moore, Esq.
  Florida Bar No. 773581
  Philip S. Kinney, Esq.
  Fla. Bar No.: 0709611
  *Kinney & Moore, PLLC*
  9191 R.G. Skinner Pkwy., Suite 703
  Jacksonville, Florida 32256
  Tel: (904) 642-4111
  Fax: (904) 329-1875
  E-mail: Ben@JaxLitigation.com
  Secondary: Heather@JaxLitigation.com
  Attorney for Plaintiff