2019 WL 4248895
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.

Edward John NOSEWICZ, Plaintiff,
v.
Jeffrey JANOSKO, Defendant.

Civil Action No. 16-cv-00447-PAB-KLM
|
Signed 08/19/2019

**Attorneys and Law Firms**

John L. Springer, John L. Springer, Attorney at Law, Aurora, CO, Brice Arthur Tondre, Brice A. Tondre PC, Evergreen, CO, for Plaintiff.

J. Andrew Nathan, Marni Nathan Kloster, Nicholas Christaan Poppe, Nathan Dumm & Mayer PC, Denver, CO, for Defendant.

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Kristen L. Mix, United States Magistrate Judge

\*1 This matter is before the Court on Defendant's **Renewed Motion to Strike Portions to Dr. Engelstad's Expert Disclosure** [#100][1] (the "Motion"). Inexplicably, Plaintiff's counsel did not file a response to the Motion. Ordinarily, where a party fails to file a response, the Court may treat the motion as unopposed. *See Walter v. HSM Receivables,* No. 13-cv-00564-RM-KLM, 2014 WL 5395197, at \*1 (D. Colo. Oct. 23, 2014) ("The Motion is essentially unopposed as no response has been filed by Defendants."); *Armstrong v. Swanson,* No. 08-cv-00194-MSK-MEH, 2009 WL 1938793, at \*1 (D. Colo. July 2, 2009) (noting that Plaintiff did not file a response to the motion for sanctions and "deem[ing] the Plaintiff to have defaulted on th[e] motion."). However, given that the Motion [#100] raises identical arguments found in Defendant's March 3, 2017 Motion to Strike Plaintiff's Non-Retained Expert Disclosures [#36] (the "First Motion"), to which Plaintiff did file a Response [#38], the Court considers Plaintiff's arguments contained in that Response when analyzing the instant Motion [#100]. The Court also considers Defendant's Reply [#41] in further support of the First Motion [#36] to the extent necessary. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion [#100] has been referred to the undersigned for disposition. *See* [#101]. The Court has reviewed the Motion [#100], Plaintiff's prior Response [#38], Defendant's prior Reply [#41], the exhibits, the entire case file, and the applicable law, and is fully advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#100] be **GRANTED**.[2]

[1] "[#100]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] A magistrate judge may issue orders on nondispositive motions only. *Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1462-63 (10th Cir. 1988). The Tenth Circuit has held that "[m]otions not designated on their face as one of those excepted in [§ 636(b)(1)(A)] are nevertheless to be treated as such when they have an identical effect." *First Union Mortgage Corp. v. Smith,* 229 F.3d 992, 995 (10th Cir. 2000) (citing *Ocelot Oil Corp.,* 847 F.2d at 1462). "Although the decision to exclude witness testimony generally is not dispositive of a case, '[a] handful of cases recognize that, in certain unusual circumstances, a ruling that would ordinarily be non-dispositive, may nevertheless be reviewed as a dispositive ruling.' " *Kouzmanoff v. UNUM Life Ins. Co. of Am.,* No. 17-cv-00721-RM-STV, 2018 WL 5292133, at \*1 (D. Colo. Oct. 25, 2018) (quoting *Jama v. City & Cty. of Denver,* 304 F.R.D. 289, 295 (D. Colo. 2014) (collecting cases)). Here, a favorable ruling on Defendant's Motion [#100] may have a dispositive effect in light of the matters on which Plaintiff's non-retained expert intends to testify. Therefore, in an abundance of caution, the Court issues a recommendation on the Motion [#100] pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1).

### I. Background[3]

[3] The Court summarizes the background of this case only to the extent necessary to issue this Recommendation on the Motion [#100].

\*2 Plaintiff initiated this 42 U.S.C. § 1983 lawsuit on February 24, 2016. Compl. [#1]. Plaintiff presently asserts a Fourth Amendment claim for use of excessive force stemming from a December 6, 2014 physical altercation with Defendant that occurred while Plaintiff was housed in

the Adams County, Colorado Detention Facility ("ACDF"). *See Am. Compl.* [#10]; *Order and Judgment* [#86]; *Mandate* [#88]. This matter is currently set for a five-day jury trial beginning on October 7, 2019. *Minute Order* [#96].

On the parties' deadline to disclose affirmative experts, Plaintiff disclosed the following four treating physicians as non-retained expert witnesses pursuant to Rule 26(a)(2)(C): [4] (1) Dr. Mark Engelstad ("Engelstad"); (2) Dr. Arif Rohilla ("Rohilla"); (3) Dr. Martin Yussman ("Yussman"); and (4) Roy Theriot, D.D.S. ("Theriot"). *Order* [#98] at 3. In addition, Plaintiff disclosed Dan Montgomery and Dr. Stephanie Chiu as specially retained expert witnesses pursuant to Rule 26(a)(2)(B). *Id*. Thus, Plaintiff initially disclosed six experts in total.

[4]   Unless otherwise noted, "Rule 26" and all similar citations refer to the Federal Rules of Civil Procedure.

On March 3, 2017, Defendant filed the First Motion [#36] which sought to strike all four of Plaintiff's non-retained expert disclosures and to preclude those experts from testifying at trial. *Id*. In summation, Defendant argued that Plaintiff's expert disclosures had failed to comply with Rule 26(a)(2)(C), that Plaintiff's non-retained experts should have been designated as retained experts, and that at least three of Plaintiff's experts should be stricken because Plaintiff had exceeded the limit of three experts per side as set forth in the Scheduling Order [#23]. *Id*. Plaintiff filed his Response [#38] to the First Motion agreeing to withdraw Dr. Yussman's disclosure and strike Dr. Theriot's disclosure to the extent that it contained causation opinions. *Id.* at 3-4. Plaintiff contested Defendant's arguments with respect to the disclosures of Dr. Engelstad and Dr. Rohilla but, in doing so, failed to even acknowledge the fact that he had exceeded his limit of expert witnesses. *Id*.

In light of Plaintiff's failure to address the expert limitation issue, the Court granted Defendant's First Motion [#36] on March 27, 2019, to the extent that Defendant sought to strike the number of Plaintiff's experts necessary to enforce the Scheduling Order. *See id.* at 4-7. However, given the procedural posture of the case and Plaintiff's indication at the time that he wished to name only four expert witnesses, the Court provided Plaintiff the opportunity to comply with the limitation on experts by selecting either Dr. Engelstad or Dr. Rohilla as Plaintiff's third and final expert. *Id.* at 7. Accordingly, the Court denied Defendant's First Motion [#36] without prejudice to the extent that it sought to strike the disclosures of Dr. Engelstad, Dr. Rohilla, and Dr. Theriot and preclude those witnesses from testifying at trial; and ordered Plaintiff to serve Defendant with a Rule 26(e) supplement which identified whether Plaintiff intended to name Dr. Engelstad or Dr. Rohilla as his third and final expert witness. *Id.* at 7-8. [5] In light of this holding, the Court declined to address the merits of Defendant's arguments pertaining to Rules 26(a)(2) and 37(c) until after Plaintiff had notified Defendant whether Dr. Engelstad or Dr. Rohilla would serve as Plaintiff's third and final expert. *Id.* at 7. However, the Court invited Defendant to file a renewed motion to strike Plaintiff's expert disclosures pursuant to Rule 37(c) once Plaintiff had disclosed which of these two experts he intended to use at trial and if such objections remained. *Id*.

[5]   The Court directed Plaintiff to select either Dr. Engelstad or Dr. Rohilla given that Plaintiff appeared to have subsequently removed Dr. Theriot's expert designation in his Supplement [#63] to the Final Pretrial Order [#59]. *Order* [#98] at 4.

**\*3** Following the Court's Order [#98], Defendant filed the instant Motion [#100] on April 18, 2019. In the Motion, Defendant advises the Court that Plaintiff has selected Dr. Engelstad as his third and final expert, thus abandoning the expert designation of Dr. Rohilla. [#100] at 1. Accordingly, Defendant renews his request from the First Motion [#36] that the Court issue an order (1) striking subparagraphs (b) through (e) of Plaintiff's expert disclosure of Dr. Engelstad and (2) precluding Dr. Engelstad from testifying on those topics at trial. *Id*. As grounds for this request, Defendant first argues that Plaintiff's disclosure of Dr. Engelstad violates Rule 26(a)(2)(C) by failing to adequately identify the factual basis for his opinions set forth in subparagraphs (b) through (e). *Id.* at 3-4. Second, Defendant argues that Dr. Engelstad intends to proffer opinions that go beyond the scope of his role as Plaintiff's treating physician. Thus, according to Defendant, Plaintiff must designate Dr. Engelstad as a "retained or specially employed" expert and provide a written expert report that complies with Rule 26(a)(2)(B). *Id.* at 5.

Although Plaintiff did not respond to the instant Motion [#100], he did address these arguments in his Response [#38] to the First Motion [#36], contending that Dr. Engelstad should not be precluded from testifying at trial because his disclosure fully complied with Rule 26(a)(2)(C) and because his opinions are within the proper scope of a non-retained expert. *Response* [#38] at 5-12.

## II. Legal Standard

Rule 26(a) requires a party to disclose the identity of any expert witness it may use at trial. Fed. R. Civ. P. 26(a)(2)(A). If such a witness is "one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the disclosure of the expert's identity must be accompanied by a written report prepared and signed by him. Fed. R. Civ. P. 26(a)(2)(B). The written report must contain the following:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi). In contrast, if an expert witness is not "retained or specially employed," the disclosure of his identity need only contain "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). "The purpose of expert disclosures is 'to eliminate surprise and provide opposing counsel with enough information ... to prepare efficiently for deposition, any pretrial motions and trial.' " *Carbaugh v. Home Depot U.S.A., Inc.*, No. 13-cv-02848-REB-MEH, 2014 WL 3543714, at *2 (D. Colo. July 16, 2014) (quoting *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1121-22 (D. Colo. 2006)).

While Rule 26(a)(2) addresses the sufficiency of the disclosure, Rule 37(c)(1) provides that failure to comply with Rule 26(a) precludes the use of the expert information at issue "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002) ("Rule 37(c) permits a district court to refuse to strike expert reports and allow expert testimony even when the expert report violates Rule 26(a) if the violation is justified or harmless."). Thus, the Court must first determine whether the expert disclosure was sufficient under Rule 26(a) and, if not, then must analyze whether the insufficient disclosure was nonetheless "substantially justified or ... harmless" under Rule 37(c)(1).

**\*4** "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (quoting *Mid-Am. Tablewares, Inc. v. Moqi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996)). "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Id.* (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998)). However, the Tenth Circuit has enumerated four factors the Court should use to guide its discretion in determining whether a Rule 26(a) violation is substantially justified or harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.* (citations omitted). The non-moving party has the burden of showing that it was substantially justified in failing to comply with Rule 26(a) and that such failure was harmless. *Seeley v. Home Depot U.S.A., Inc.*, No. 17-cv-00584-PAB-NYW, 2018 WL 4275375, at *5 (D. Colo. Sept. 7, 2018) (citing *Skarda v. Johnson & Johnson*, 2014 WL 12792345, at *1 (D.N.M. June 30, 2014)). In analyzing these factors, the Court notes that the Tenth Circuit has stated that "[t]he decision to exclude evidence is a drastic sanction." *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997).

## III. Analysis

In the Motion [#36], Defendant challenges only subparagraphs (b) through (e) of Plaintiff's Expert Witness Disclosures [#100-1] regarding Dr. Engelstad. *Motion* [#100] at 1. Those subparagraphs state that Dr. Engelstad will testify:

b. As a direct result of the incident at the Adams County Jail on December 6, 2014, where a jail guard used

physical force and violence against Plaintiff, which was a traumatic event, his preexisting OCD and generalized anxiety disorder were triggered and aggravated, which caused him to have increased anxiety and emotional stress, including his believing, at the time of the above-mentioned incident, that he was having a heart attack that might cause his death. This would have been a reasonable belief on his part, given his history of coronary artery disease and the traumatic nature of the incident.

c. Plaintiff has reported that following the subject incident he experienced nightmares and insomnia and that he experience [sic] ongoing anxiety and emotional stress when he sees a law enforcement officer and that he frequently thinks about the subject incident, all of which are a result of the aggravation of his OCD by the subject incident.

d. Additionally, as a direct result of the subject incident, Plaintiff suffers from post-traumatic stress disorder ("PTSD"), which is an anxiety disorder that is caused by a traumatic event and that causes one to reexperience the event.

e. As a result of the subject incident, Plaintiff will continue, for an indefinite period of time, to have increased anxiety and emotional stress and to re-experience the traumatic incident.

*Ex. A, Pl.'s Expert Witness Disclosures* [#100-1] at 2-3. Plaintiff's disclosure further states:

> Dr. Engelstad's expert opinions will be presented within a reasonable degree of medical probability. His opinions will be based upon his education, experience in treating patients who have OCD, and his examination and treatment of Plaintiff both before and after December 6, 2014. Dr. Engelstad is qualified to give expert opinion testimony in this case because he has been Plaintiff's physician since 2011 and is licensed to practice medicine in the State of Colorado.

*Id.* at 3.

Defendant seeks to strike Dr. Engelstad's opinion testimony set forth in subparagraphs (b) through (e) and preclude his testimony on those topics on two grounds: (1) Plaintiff's expert disclosure of Dr. Engelstad is deficient under Rule 26(a)(2)(C); and (2) Dr. Engelstad should have been designated as a retained expert, requiring a report under Rule 26(a)(2)(B). The Court addresses each argument in turn and, to the extent necessary, proceeds to analyze whether Dr. Engelstad's challenged opinions should be excluded pursuant to Rule 37(c)(1).

**A. Sufficiency of Rule 26(a)(2)(C) Disclosure**

**\*5** As set forth above, Rule 26(a)(2)(C) requires that the disclosure of a non-retained expert contain "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). Courts have noted that "there is 'scant case law outlining what constitutes a sufficient disclosure under Rule 26(a)(2)(C).' " *Seeley*, 2018 WL 4275375, at \*4 (quoting *Chambers v. Fike*, 2014 WL 3565481, at \*7 (D. Kan. July 18, 2014)). What is clear is that the requirements of Rule 26(a)(2)(C) "differ substantially from the more detailed expatiation required of a report provided by a retained expert." *Nicastle v. Adams Cty. Sheriff's Office ("Nicastle II")*, No. 10-cv-00816-REB-KMT, 2011 WL 1674954, at \*1 (D. Colo. May 3, 2011); *see also* Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment ("This [Rule 26(a)(2)(C)] disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B).").

However, "Rule 26(a)(2) disclosure obligations cannot be ignored or dismissed as a mere formality," and while less demanding, these requirements still must be met. *Anderson v. Seven Falls Co.*, No. 12-cv-01490-RM-CBS, 2013 WL 3771300, at \*6 (D. Colo. Jul. 18, 2013). "At a minimum, the disclosure should obviate the danger of unfair surprise regarding the factual and opinion testimony of the non[-]retained expert." *Hayes v. Am. Credit Acceptance, LLC*, No. 13-2413-RDR, 2014 WL 3927277, at \*3 (D. Kan. Aug. 12, 2014). For instance, "[i]t is not enough [for a Rule 26(a)(2)(C) disclosure] to state that the witness will testify consistent with information contained in the medical records." *Id.* at \*3. Instead, the disclosure must "summarize actual and specific opinions" and, if a physician is to opine on causation, explain "how" and "why" the physician reached a particular opinion. *Id*.

Here, Defendant argues that Dr. Engelstad's opinions are not substantiated by his own medical records and that Plaintiff's disclosure is therefore deficient pursuant to Rule 26(a)(2)(C) for failing to provide an adequate factual basis for Dr. Engelstad's opinions. *Motion* [#100] at 3. In opposition, Plaintiff contends that Dr. Engelstad's disclosure adequately summarizes his opinions and that, because these are the opinions of a non-retained treating physician, the disclosure need not regurgitate Dr. Engelstad's medical records nor identify a specific section of the medical records to satisfy Rule 26(a)(2)(C). *Response* [#38] at 4. After reviewing Plaintiff's disclosure, the Court finds that although Plaintiff provides a summary of the opinions on which Dr. Engelstad is expected to testify, the disclosure nevertheless fails to adequately summarize the factual basis for those opinions to satisfy the requirements of Rule 26(a)(2)(C).

Plaintiff's disclosure states that Dr. Engelstad "will testify consistent with the medical records and reports generated in this case" and that "[h]is opinions will be based upon ... his examination and treatment of Plaintiff both before and after December 6, 2014." *Ex. A, Pl.'s Expert Witness Disclosures* [#100-1] at 1-2. Although Dr. Engelstad's medical records have apparently been provided to Defendant, no specific "medical record" or "report" is cited or attached to Plaintiff's disclosure. *See generally id.* Defendant avers that Dr. Engelstad's medical records do not indicate that Dr. Engelstad reached the opinions set forth in the disclosure and, in fact, make no mention of Plaintiff's detention or the December 6, 2014 incident at ACDF. *Motion* [#100] at 3. Specifically, Defendant contends that Dr. Engelstad's medical records make no reference to: (1) an alleged heart attack (subparagraph (b)); (2) nightmares, law enforcement officers, or emotional distress (subparagraph (c)); (3) PTSD (subparagraph (d)); or (4) the increased anxiety or emotional stress which Dr. Engelstad opines will continue "for an indefinite period of time" and cause Plaintiff "to re-experience the traumatic incident" (subparagraph (e)). *Id.* at 3-4.[6]

---

[6] Counsel for Defendant represents that "they have reviewed an entire year's worth of [medical] records from Dr. Engelstad [and that] [t]here is no mention of Deputy Janosko, ACDF, or a related causal opinion as to Nosewicz's various conditions." *Motion* [#100] at 3 n.2. Defendant provides the Court with portions of Dr. Engelstad's medical records which support counsels' representation. *Id.; see Ex. B, Engelstad Medical Records* [#100-2]. Defendant also offers to provide the remaining medical records for the Court's review. *Motion* [#100] at 3 n.2. Given that Plaintiff has not contested this point and has not cited to any of Dr. Engelstad's medical records which would contravene the representation made by Defendant's counsel, the Court finds it unnecessary to review the remainder of Dr. Engelstad's medical records for purposes of this Recommendation. *See generally Response* [#38].

**\*6** Although referring to a physician's medical records is appropriate, a proper non-retained expert disclosure should also identify specifics from those records in order to meet the requirements of Rule 26(a)(2)(C). *A.R. by Pacetti v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, No. 12-cv-02197-RM-KLM, 2013 WL 5462277, at \*3-4 (D. Colo. Sept. 30, 2013). "It is not enough to state that the witness will testify consistent with information contained [in] the medical records[.]" *Hayes*, 2014 WL 3927277, at \*2. "[C]itation to records with no clear indication of what sections will be used or how the facts or opinions will be framed and presented in testimony does not constitute a 'summary of the facts and opinions to which the witness is expected to testify' within the meaning and requirements of Rule 26(a)(2)(C)(ii)." *A.R. by Pacetti*, 2013 WL 5462277, at \*3 (quoting Fed. R. Civ. P. 26(a)(2)(C)(ii)).

Moreover, "[d]esignation of [ ] a prodigious volume of material does not constitute a summary of the facts to which the witnesses will testify within the meaning and requirements of Rule 26(a)(2)(C)." *Nicastle II*, 2011 WL 1674954, at \*1; *see Alarid v. Biomet, Inc.*, No. 14-cv-02667-REB-NYW, 2015 WL 5833839, at \*4 (D. Colo. Oct. 7, 2015) (finding that an expert disclosure could not meet the obligations of Rule 26(a)(2)(C) "by merely pointing to large swaths of information, like general references to otherwise unidentified" testimony and documentation). Therefore, the Court rejects Plaintiff's argument that an adequate summary of opinions alone may absolve a disclosing party of the obligation to identify the factual basis for those opinions without any degree of specificity. *Response* [#38] at 8-9.

To an extent, Plaintiff is correct that Rule 26(a)(2)(C) disclosures need not "outline each and every fact to which the non-retained expert will testify," *Chambers*, 2014 WL 3565481, at \*7, or be limited only to opinions that are "expressly stated in the medical records," *Seeley*, 2018 WL 4275375, at \*3. However, where a non-retained medical expert intends to opine on matters of causation, his Rule 26(a)(2)(C) disclosure must explain "how" and "why" a particular opinion was reached. *Hayes*, 2014 WL 3927277, at \*3 ("The

disclosures need to be more specific with regard to why the treating physicians believe that the defendants' conduct caused their patients' conditions to worsen and how their patients' conditions worsened as a result of the defendants' actions."). Indeed, "[t]he Advisory Committee's note to the 2010 amendments states that the amended version of Rule 26(a)(2)(C) 'mandate[s] summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) *and of the facts supporting those opinions*.' " *Seeley*, 2018 WL 4275375, at *5 (quoting Fed. R. Civ. P. 26 advisory committee notes, 2010 amendments) (emphasis added in original).

As discussed more fully in Section B, it is apparent to the Court that Dr. Engelstad intends to offer opinions regarding the cause and prognosis of Plaintiff's injuries. While a treating physician may opine on such questions as a non-retained expert witness, the physician may only do so "to the limited extent that [the opinions were] a necessary part of a patient's treatment." *Starling v. Union Pac. R.R. Co.*, 203 F.R.D. 468, 479 (D. Kan. 2001). Plaintiff argues that the disclosure of Dr. Engelstad is sufficient because it can be "reasonably assumed" or "reasonably inferred" that Plaintiff told Dr. Engelstad about his encounter with Defendant. *Response* [#38] at 10. However, this is contradicted by Defendant's assertion that Dr. Engelstad's medical records fail to offer any factual support for his disclosed opinions. *Motion* [#100] at 3-4. Notably, Plaintiff never directly addresses this identical assertion made in Defendant's First Motion [#36] and does not attempt to direct the Court or Defendant to any portion of the "medical records [or] reports generated in this case" which would provide the factual basis Defendant claims is lacking. *See generally Response* [#38].

***7** "Rule 26(a)(2)(C) disclosures are meant to define the scope of expert testimony so that an opposing party can be prepared to address the opinions proffered[.]" *Green Earth Wellness Ctr. LLC v. Atain Specialty Ins. Co.*, No. 13-cv-03452-MSK-NYW, 2016 WL 632051, at *3 (D. Colo. Feb. 17, 2016). "At a minimum, the disclosure should obviate the danger of unfair surprise regarding the factual and opinion testimony of the non[-]retained expert." *Hayes*, 2014 WL 3927277, at *3. Despite Plaintiff's statement to the contrary, the Court finds that the disclosure's vague reference to a large swath of medical records and mere reliance on unsupported "assumptions" are not sufficient to meet this standard. As Plaintiff's disclosure currently stands, Defendant has no way of knowing what facts specifically serve as the basis for Dr. Engelstad's proffered opinions.

Without conceding to any deficiency in the disclosure, Plaintiff provided an Affidavit of Dr. Engelstad [#38-1] in response to Defendant's First Motion [#36] as a Rule 26(e) supplement. *See Response* [#38] at 7, 10; *Aff. of Dr. Engelstad* [#38-1]. While Dr. Engelstad's Affidavit primarily speaks to whether he is properly designated as a non-retained expert witness (which the Court addresses in Section B of this Recommendation), Dr. Engelstad attests that:

> The bases of my opinions are my knowledge and treatment of [Plaintiff's] preexisting OCD and generalized anxiety disorder and the information that he reported to me about a jail guard using force and violence against him while he was incarcerated at the Adams County Jail and how he has been affected by the incident.

*Aff. of Dr. Engelstad* [#38-1] at 2-3. However, as Defendant notes, the supplement is untimely as it was produced after the March 17, 2017 discovery cut off. *Reply* [#41] at 3; *Minute Order* [#33]. Moreover, the Affidavit still does not disclose the facts supporting Dr. Engelstad's opinions. Despite Defendant's contention that Dr. Engelstad's alleged opinions are not supported by his medical records and that those records make no reference to Plaintiff's detention or the December 6, 2014 incident at ACDF, Plaintiff avoids addressing this issue and neither the Response [#38] nor the Affidavit [#38-1] point to any factual record as the basis for Dr. Engelstad's above statements.

Therefore, although Plaintiff's disclosure outlines the opinions on which Dr. Engelstad will testify, the Court agrees with Defendant that the disclosure is deficient to the extent that it fails to specify the factual basis for those opinions. *See Seeley*, 2018 WL 4275375, at *5 ("[P]laintiff's disclosures are deficient to the extent that they fail to specify the factual basis for [the treating physician's] opinions." (citing *Hayes*, 2014 WL 3927277, at *3 (finding that plaintiffs' disclosures "[fell] short ... concerning the anticipated testimony that defendants' conduct proximately caused" the injuries alleged because they "lack[ed] any factual detail describing how this [was] the case"))) (other citations omitted). Accordingly, the Court finds that Plaintiff's disclosure of Dr. Engelstad is deficient

under Rule 26(a)(2)(C) with respect to the opinion testimony set forth in subparagraphs (b) through (e).

**B. Expert Report Requirement Pursuant to Rule 26(a)(2) (B)**

Even if Plaintiff's disclosure did adequately summarize the factual basis for Dr. Engelstad's opinions in compliance with Rule 26(a)(2)(C), the Court further finds that the testimony identified in subparagraphs (b), (d), and (e) of Plaintiff's disclosure contains opinions of causation and prognosis which trigger the greater disclosure requirements of Rule 26(a)(2)(B).

Typically, treating physicians "do not come within the purview of [Rule 26(a)(2)(B)]'s] requirement." *Trejo v. Franklin*, No. 04-cv-02523-REB, 2007 WL 2221433, at *1 (D. Colo. July 30, 2007) (citation omitted). This is because treating physicians' "testimony is [often] based upon their personal knowledge of the treatment of the patient and not information acquired from outside sources for the purpose of giving an opinion in anticipation of trial." *Id.* (quoting *Baker v. Taco Bell Corp.*, 163 F.R.D. 348, 349 (D. Colo. 1995)); *see Stone v. Deagle*, No. 05-cv-1438-RPM-CBS, 2006 U.S. Dist. LEXIS 90430, at *9-10 (D. Colo. Dec. 14, 2006) (unreported decision) ("In contrast to the retained expert, the Advisory Committee Notes to Rule 26(a)(2)(B) state that 'a treating physician ... can be deposed or called to testify at trial without any requirement for a written report.' Presumably, a written report from a treating physician is not necessary because the treating physician prepares contemporaneous notes documenting his observations, findings, and treatment regime."); *Morris v. Wells Fargo Bank, N.A.*, No. 09-cv-02160-CMA-KMT, 2010 WL 2501078, at *1 (D. Colo. June 17, 2010) (unreported decision) ("[I]n general, treating physicians do not come within the purview of the report requirement.").

**\*8** "Although a witness' records as a treating physician may, in some instances, obviate the need for a report, 'it is the substance of the expert's testimony, not the status of the expert, which will dictate whether a Rule 26(a)(2)(B) report will be required.' " *Carbaugh*, 2014 WL 3543714, at *3 (quoting *Trejo*, 2007 WL 2221433, at *2); *see also Sellers v. Butler*, No. 02-3055-DJW, 2006 WL 2714274, at *3 (D. Kan. Sept. 22, 2006) (unreported decision) ("Rule 26(a)(2)(B) focuses not on the status of the witness, but rather on the substance and/or scope of [his] testimony."); *Wreath v. Kansas*, 161 F.R.D. 448, 450 (D. Kan. 1995) ("The determinative issue is the scope of the proposed testimony.").

"[A] treating physician who has formulated opinions going beyond what was necessary to provide appropriate care for the injured party steps into the shoes of a retained expert for the purposes of" Rule 26(a)(2)(B). *Stone*, 2006 U.S. Dist. LEXIS 90430, at *11 (quoting *Thomas v. Consol. Rail Corp.*, 169 F.R.D. 1, 2 (D. Mass. 1996)); *see also Wreath*, 161 F.5d at 450 ("[A] treating physician requested to review medical records of another health care provider in order to render opinion testimony concerning the appropriateness of the care and treatment of that provider would be specifically retained notwithstanding that he also happens to be the treating physician.").

"Similarly, when a treating physician's information or opinions were developed for trial, or where [his] expert testimony will concern matters not based on observations during the course of treatment, the treating physician will be required to prepare a written report" pursuant to Rule 26(a) (2)(B). *Stone*, 2006 U.S. Dist. LEXIS 90430, at *11 (citing *Washington v. Arapahoe Cty. Dep't of Soc. Servs.*, 197 F.R.D. 439, 441-42 (D. Colo. 2000)). One matter that is typically "not based on observations during the course of treatment" is the cause of a patient's injuries. Generally, when a treating physician " 'opines as to causation, prognosis, or future disability, the physician is going beyond what he said and did and why he did it ... and is giving an opinion formed because there is a lawsuit.' " *Kemp v. Webster*, No. 09-cv-00295-RBJ-MJW, 2012 WL 5289573, at *2 (D. Colo. Oct. 26, 2012) (quoting *Davis v. GEO Group*, No. 10-cv-02229-WJM-KMT, 2012 WL 882405, at * 2 (D. Colo. March 15, 2012)). In some cases, however, a treating physician may be required to form an opinion about the cause of an injury in order to properly treat it. In such cases, the physician may testify about his opinion regarding causation "to the limited extent that [the opinion was] a necessary part of a patient's treatment" without being considered a retained expert witness. *Starling*, 203 F.R.D. at 479.

This Court has adopted a burden-shifting procedure for determining whether a designated expert witness is "retained or specially employed" and thus required to provide a Rule 26(a)(2)(B) report. *See Carbaugh*, 2014 WL 3543714, at *2; *Morris*, 2010 WL 2501078, at *2 ("[I]t is clear that some showing must be made to distinguish an expert witness not required to provide a report under Rule 26(a)(2)(B) from the vast majority of cases where experts are required to provide a report."). "The party moving to strike the witness bears the initial burden of showing that the disclosing party failed to produce a written report under Rule 26(a)(2)(B)." *Carbaugh,*

2014 WL 3543714, at *2 (citation omitted). The burden then shifts to the designating party to produce some evidence demonstrating that the designated expert is not retained or specially employed. *Id.*; *see also Morris*, 2010 WL 2501078, at *3 (noting that vague assertions that a designated expert is not retained are insufficient). Again, " 'it is the substance of the expert's testimony, not the status of the expert, which will dictate whether a Rule 26(a)(2)(B) report will be required.' " *Trejo*, 2007 WL 2221433, at *2 (quoting *Harvey v. USA*, No. 04-cv-00188-WYD-CBS, 2005 WL 3164236, at *8 (D. Colo. Nov. 28, 2005)) (internal brackets omitted).

**\*9** Turning to this case, Plaintiff concedes that he has not produced a written report under Rule 26(a)(2)(B) but asserts that such a report is not required because Dr. Engelstad is properly designated as a non-retained expert pursuant to Rule 26(a)(2)(C). *See Response* [#38] at 1-4. The Court therefore finds that Defendant has carried his initial burden. *See Carbaugh*, 2014 WL 3543714, at *2. Accordingly, the burden shifts to Plaintiff to produce some evidence demonstrating that Dr. Engelstad is properly designated as a non-retained expert. *See id.* at *2-3.

Defendant views Plaintiff's disclosure as indicating Dr. Engelstad's intention to testify that Plaintiff's OCD, anxiety, PTSD, and heart-related issues, were all the direct result of the parties' altercation at ACDF on December 6, 2014. *Motion* [#100] at 5; *see also First Motion* [#36] at 4, 8-9. Plaintiff, on the other hand, first contends that "Dr. Engelstad's disclosure does not state that the above-listed conditions, with the exception of PTSD, were caused by Plaintiff's encounter with Defendant at ACDF." *Response* [#38] at 6. Plaintiff argues that Dr. Engelstad's opinion is not that the encounter with Defendant "caused" Plaintiff's OCD, anxiety, or heart-related issues but rather that the encounter merely "triggered or aggravated" these conditions. *Id*. Plaintiff states that it would be "completely ludicrous and absurd" to suggest that the encounter caused these conditions given that they were pre-existing before the encounter. *Id*.

The Court finds Plaintiff's argument unpersuasive. Read as a whole, subparagraphs (b), (d), and (e) clearly speak to the injuries Plaintiff allegedly suffered or will suffer "as a direct result" of the incident underlying this litigation. Plaintiff cites no authority to suggest that "causation" in this context only refers to the original onset of a health condition.

To the extent that Dr. Engelstad's opinion testimony does speak to causation, Plaintiff next argues that the opinions are permissible under Rule 26(a)(2)(C) because they were formed as a necessary part of Plaintiff's treatment. *Response* [#38] at 7-10. Plaintiff asks that the Court follow the undersigned's ruling in *Scholl v. Pateder*, No. 09-cv-02959-PAB-KLM, 2011 WL 2473284 (D. Colo. June 22, 2011), where, according to Plaintiff, "it was decided that a treating physician may opine as to causation of an injury if he was required to form the opinion in order to properly treat it." *Response* [#38] at 7. Plaintiff's sole reliance on *Scholl* is curious given that the two treating physicians at issue in *Scholl* were held to be improperly identified as "non-retained" experts insofar as they sought to proffer opinion testimony that relied on a different doctor's opinions and matters not based on the plaintiff's consultation. 2011 WL 2473284, at *4-5.

As discussed *supra*, Dr. Engelstad's disclosure fails to cite to any specific medical record or explain with any level of detail when or how he formed his opinions. Instead, the disclosure vaguely states that "[h]is opinions will be based upon his education, experience in treating patients who have OCD, and his examination and treatment of Plaintiff both before and after December 6, 2014." *Ex. A, Pl.'s Expert Witness Disclosures* [#100-1] at 3. Thus, the disclosure fails to demonstrate that Dr. Engelstad's causation opinions regarding Plaintiff's health were formed during Plaintiff's treatment and not in preparation for this litigation. *See Carbaugh*, 2014 WL 3543714, at *4 (holding that when a treating physician relies even in part on information outside the course of treatment, such opinions trigger the requirements of Rule 26(a)(2)(B)); *Hayes*, 2014 WL 3927277, at *3 ("The disclosures need to be more specific with regard to why the treating physicians believe that the defendants' conduct caused their patients' conditions to worsen and how their patients' conditions worsened as a result of the defendants' actions.").

**\*10** Again, the Court recognizes that Dr. Engelstad's opinions are not automatically subject to the requirements of Rule 26(a)(2)(B) simply because they touch on issues of causation and prognosis. *See Seeley*, 2018 WL 4275375, at *2 n.4. In this case, however, Defendant has raised a colorable argument, by pointing to Dr. Engelstad's medical records, that the opinions stated in subparagraphs (b), (d), and (e) go beyond Dr. Engelstad's personal knowledge and treatment of Plaintiff. This is especially true with respect to subparagraph (b) where Dr. Engelstad opines that Plaintiff reasonably believed that he was having a heart attack that might cause his death *at the time of the incident*. *Ex. A, Pl.'s Expert Witness Disclosures* [#100-1] at 2. Such an opinion, the Court finds, clearly "go[es] beyond what was necessary to

provide appropriate care for the injured party[.]" *Stone*, 2006 U.S. Dist. LEXIS 90430, at *11 (internal quotation marks and citations omitted).

To rebut Defendant's argument, Plaintiff largely relies on Dr. Engelstad's Affidavit [#38-1] which purports to serve as a Rule 26(e) supplement. *Response* [#38] at 7, 10. In the Affidavit, Dr. Engelstad states that he formed his opinions regarding the cause of Plaintiff's health issues during the course of treatment and did so necessarily to treat Plaintiff rather than for purposes of this lawsuit. *Aff. of Dr. Engelstad* [#38-1] at 3. Aside from the fact that this supplement is untimely, *see supra*, Dr. Engelstad's attestations are entirely conclusory and self-serving, and do not cite any specific evidence to demonstrate that his causation opinions were reached as a necessary part of Plaintiff's treatment and not for purposes of this lawsuit. *See Starling*, 203 F.R.D. at 479.

Therefore, the Court finds that Plaintiff has failed to carry his burden by providing sufficient evidence to show that Dr. Engelstad's opinions regarding causation and prognosis are based on information that was acquired during the course of Plaintiff's treatment or were medically required for the treatment. To the extent that Plaintiff asks the Court to simply assume as much based on the record before it, the Court declines to do so and finds that Dr. Engelstad's opinion testimony, set forth in subparagraphs (b), (d), and (e), goes "beyond what [Dr. Engelstad] saw and did and why he did it" and appears to give an opinion that was formed because of this lawsuit. *Hermann v. Hartford Cas. Ins. Co.*, No. 11-cv-03188-REB-MEH, 2012 WL 5569769, at *3 (D. Colo. Nov. 15, 2012); *see Carbaugh*, 2014 WL 3543714, at *2-3.

**C. Appropriateness of Exclusion as a Sanction Pursuant to Rule 37(c)(1)**

Given that the Court concludes that Plaintiff's disclosure of Dr. Engelstad's expert opinion does not comply with the requirements of Rule 26(a)(2)(C) and contains testimony triggering the heightened reporting requirements of Rule 26(a)(2)(B), the Court must determine whether to exclude Dr. Engelstad's testimony under Rule 37(c)(1). Pursuant to Rule 37(c)(1), a party who fails to disclose an expert witness as required under Rule 26(a)(2) may not "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). As stated above, although "[t]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court[,]" the Court should consider the following four factors when exercising its discretion: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc.*, 170 F.3d at 993 (citations omitted). Importantly, it is Plaintiff, as the non-moving party, who has the burden of showing that he was substantially justified in failing to comply with Rule 26(a) and that such failure was harmless. *Seeley*, 2018 WL 4275375, at *5 (citation omitted).

**\*11** Here, the Court finds that Plaintiff has failed to carry his burden of showing that the deficient disclosure of Dr. Engelstad is substantially justified or harmless. Aside from a cursory argument that Defendant is not prejudiced by the disclosure, Plaintiff does not address Rule 37(c)(1) in his Response [#38] to the First Motion [#36] and has failed to file any response to the instant Motion [#100]. Therefore, considering the four factors outlined above, the Court finds that the exclusion of Dr. Engelstad's testimony set forth in subparagraphs (b) through (e) is warranted.

First, despite Plaintiff's cursory argument to the contrary, the Court finds that the prejudice against Defendant is self-evident. As Defendant notes, the disclosure provides insufficient notice regarding Dr. Engelstad's testimony that Plaintiff's wide range of medical issues were allegedly caused by the December 6, 2014 incident, especially considering the lack of any reference to the incident in Dr. Engelstad's medical records. *Motion* [#100] at 6. Thus, without knowing the factual basis for this testimony, Defendant is in no position to address the opinions on which Dr. Engelstad intends to testify. *See Green Earth Wellness Ctr. LLC*, 2016 WL 632051, at *3 (D. Colo. Feb. 17, 2016); *see also Hayes*, 2014 WL 3927277, at *3. Second, discovery in this case ended on March 17, 2017, the Trial Preparation Conference before Chief Judge Brimmer is set for September 20, 2019, and trial is set to commence on October 7, 2019. Therefore, Plaintiff's ability to cure the prejudice against Defendant is limited and there is no indication that the Trial Preparation Conference or trial dates will change. *See Hermann*, 2012 WL 5569769, at *4-5. Third, introducing Dr. Engelstad's retained expert testimony at trial likely would be disruptive given that Rule 702 challenges would likely be made at that time. *See id*. Finally, although Defendant makes notable observations to suggest an opposite conclusion, the Court declines to find Plaintiff has acted with bad faith or willfulness in this matter. [7]

| 7 | Specifically, Defendant notes that "almost none of the opinions found in" all of Plaintiff's non-retained expert disclosures "could be verified in the medical records disclosed and produced in this case." *Motion* [#100] at 7. In addition, Defendant rightfully observes that Plaintiff has been aware of the potential deficiencies with Dr. Engelstad's disclosure dating back to March of 2017, when Defendant's First Motion [#36] was filed. *Id*. However, in the two years since the First Motion was filed, Plaintiff appears to have taken no action to timely supplement his disclosure or produce additional medical records to address Defendant's legitimate concerns. *Id*. |
|---|---|

Under these circumstances, the Court finds no reason to allow the submission of a revised Rule 26(a)(2)(C) disclosure and concludes that Plaintiff may not use Dr. Engelstad's opinion testimony, identified in subparagraphs (b) through (e) of the disclosure, as evidence at trial pursuant to Rule 37(c)(1).

### III. Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the Motion [#100] be **GRANTED** and that the Court **EXCLUDE** the testimony of Dr. Mark Engelstad, identified in subparagraphs (b) through (e) of Plaintiff's Expert Witness Disclosures [#100-1], pursuant to Rule 37(c)(1).

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

**All Citations**

Slip Copy, 2019 WL 4248895

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.   10

2019 WL 4242739
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.

Edward John NOSEWICZ, Plaintiff,
v.
Jeffrey JANOSKO, Defendant.

Civil Action No. 16-cv-00447-PAB-KLM
|
Signed 09/06/2019

**Attorneys and Law Firms**

[John L. Springer](), [John L. Springer](), Attorney at Law, Aurora, CO, [Brice Arthur Tondre](), Brice A. Tondre PC, Evergreen, CO, for Plaintiff.

[J. Andrew Nathan](), [Marni Nathan Kloster](), Nathan Dumm & Mayer PC, [Nicholas Christaan Poppe](), Nathan Dumm & Mayer PC, Denver, CO, for Defendant.

### ORDER ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION

PHILIP A. BRIMMER, Chief United States District Judge

 **\*1**  This matter is before the Court on the Recommendation of United States Magistrate Judge Kristen L. Mix filed on August 19, 2019 [Docket No. 104]. The Recommendation states that objections to the Recommendation must be filed within fourteen days after its service on the parties. *See* [28 U.S.C. § 636(b)(1)(C)](). The Recommendation was served on August 20, 2019. No party has objected to the Recommendation.

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See [Summers v. Utah]()*, [927 F.2d 1165, 1167 (10th Cir. 1991)](); *see also [Thomas v. Arn]()*, [474 U.S. 140, 150 (1985)]() ("[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings"). In this matter, the Court has reviewed the Recommendation to satisfy itself that there is "no clear error on the face of the record." [1] [Fed. R. Civ. P. 72(b)](), Advisory Committee Notes. Based on this review, the Court has concluded that the Recommendation is a correct application of the facts and the law. Accordingly, it is

[1] This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, [Fed. R. Civ. P. 72(a)](), which in turn is less than a de novo review. [Fed. R. Civ. P. 72(b)]().

**ORDERED** as follows:

1. The Recommendation of United States Magistrate Judge [Docket No. 104] is accepted.

2. Defendant's Renewed Motion to Strike Portions [of] Dr. Engelstad's Expert Disclosure [Docket No. 100] is granted.

3. The testimony of Dr. Mark Engelstad identified in subparagraphs (b) through (e) of Plaintiff's Expert Witness Disclosures [Docket No. 100-1] is excluded pursuant to [Fed. R. Civ. P. 37(c)(1)]().

**All Citations**

Slip Copy, 2019 WL 4242739

---

**End of Document**                                      © 2019 Thomson Reuters. No claim to original U.S. Government Works.