**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE**

RICHARD A. TRIOLO

CASE NO.: 3:18-cv-00919-MMH-JBT

    Plaintiff,

vs.

UNITED STATES OF AMERICA,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**OBJECTION TO MAGISTRATE JUDGE'S ORDER DENYING DEFENDANT'S**
**MOTION TO STRIKE PLAINTIFF'S NON-RETAINED EXPERT WITNESSES**

Plaintiff, RICHARD A. TRIOLO, by and through his undersigned attorneys, submits his Response to Defendant's Objection to Magistrate Judge's Non-Dispositive Order Denying Defendant's Motion to Strike Plaintiff's Non-Retained Expert Witnesses, and in support thereof states as follows:

1. This case arises from a motor vehicle collision caused by a USPS vehicle on November 3, 2017. Pursuant to the Case Management Order, the Plaintiff: (i) completed discovery timely; (2) served extensive expert disclosures timely; and (3) is ready for the upcoming Mediation and/or trial.

2. The parties are scheduled for Mediation on October 21, 2019. If unsuccessful, a bench trial is scheduled during the trial term commencing March 2, 2020.

3. Defendant has filed an Objection to the Magistrate's Order denying Defendant's Motion to Strike Plaintiff's Non-Retained Expert Witnesses (hereinafter, the "Objection"). (Doc 25). In addition, the Defendant has submitted an untimely Motion to Extend Discovery Deadline

and to Continue Trial. (Doc 26). As the Court may recall, the Defendant did not seek to extend the deadlines until after its expert witness disclosure deadline passed without having disclosed any experts, and after discovery closed.

4.  In the Objection, the Defendant's first argument is that the Plaintiff must provide written expert reports pursuant to Rule 26(a)(2)(B) for treating physicians who are testifying as to causation, prognosis, or future care and treatment.

5.  Second, the Defendant argued that even if expert reports are not required from Plaintiff's non-retained expert witnesses, the disclosures do not comply with rule 26(a)(2)(C) because they do not adequately summarize both the facts and opinions to which each witness is expected to testify.

6.  Although the Defendant's Motion to Strike asserts ominous conclusions, they are not well founded. The Magistrate correctly held that a treating physician is permitted to testify regarding injury causation, diagnosis, prognosis and the extent of disability without providing a written report, if the treating physicians' opinion were formed upon observations made during the course of treatment.

7.  As to the Defendant's second basis, the Magistrate relied on the recent decision in Hinson v. United States, 2019 U.S. Dist. Lexis 111022, *9 (M.D. Fla. July 3, 2019) to reject the Defendant's position. A fair reading of the Plaintiff's non-retained disclosures demonstrates that the Plaintiff went well above and beyond the requirements of Rule 26(a)(2)(C):

> In light of the principles set forth above, the Court finds that Plaintiff's disclosures adequately summarize the facts and opinions to which each of Plaintiff's non-retained experts witnesses will testify in compliance with Rule 26(a)(2)(C). In general, the disclosures and accompanying affidavits are quite extensive and detailed.

8. The Magistrate considered the following example of one of Plaintiff's non-retained treating physicians, Dr. Raymond Topp, in making his decision:

> **Subject Matter**: Dr. Topp is a board-certified orthopedic surgeon who will testify as to his treatment on the Plaintiff's lumbar spine, and his performance of a posterior lumbar interbody fusion surgery ("PLIF") on the Plaintiff at L5-S1 due to his injuries from the subject accident. His opinions are attained directly from his treatment of the Plaintiff, and his opinions pertaining to causation of the injury and future treatment are described in his affidavit … He will testify pertaining to the Plaintiff's pain, injury, cause of injury, surgery performed on Plaintiff, follow up condition of Plaintiff after surgery including his home health care, the status of his fusion as demonstrated in the 8-30-18 MRI of Plaintiff's lumbar spine, Plaintiff's resulting limitations, present and future impairment, future need for treatment as well as future expected limitations.
>
> **Summary of Facts and Opinions**: Dr. Topp will testify he initially saw the Plaintiff on November 8, 2017 and recommended surgery. He will testify on March 22, 2018 he performed an L5-S1 posterior lumbar interbody fusion surgery due to Plaintiff's pain which was not being relieved by other chiropractic and pain management treatment and modalities. Subsequent to the surgery, he will testify that Plaintiff experienced complications and ongoing pain, and Dr. Topp administered an L5-S1 epidural steroid injection in September 2018 which was not beneficial. Dr. Topp will testify that the injuries to the Plaintiff's lumbar spine were caused by the subject accident. He will testify that the injuries to his lumbar spine are permanent in nature. He will also testify that the injuries to his lumbar spine did not pre-exist the subject accident. He will testify that the L5-S1 fusion was reasonable and related to the injuries Plaintiff received from the subject accident. He will also testify that the Plaintiff will need a future lumbar fusion extension as a result of the accident, and that the Plaintiff will need a follow up visit to an orthopedic physician at least one time per year with x-rays as stated in [his affidavit]. He will testify to the findings of the imaging and x-rays of the Plaintiff's lumbar spine prior to the surgery. He will testify as to the current condition of the Plaintiff's lumbar spine as displayed in the 8-30-18 MRI which shows the prior PLIF without complications, a T12-L1 disc herniation indenting the thecal sac with high signal annular fissure, enhancing fibrosis within right lateral recess and neural foramen at L5-S1. He will also testify that the Plaintiff has an SI joint dysfunction secondary to surgery which is permanent in nature. He will also testify as to writing a leave of absence excuse for Plaintiff post-surgery for several weeks. His testimony will be based upon his treatment of the Plaintiff as described in his medical records, medical bills, and his

3

affidavit.

9. The Magistrate compared the disclosure of Dr. Topp's testimony to the disclosure provided by the Plaintiff in the <u>Hinson</u> case. It is clear that the Plaintiff thoroughly described Dr. Topp's role as a treating surgeon, his assessment of the failure of pre-surgical conservative care, his recommendation for surgical repair of the Plaintiff's lumbar spine, the surgery performed, his post-surgical treatment, the future treatment Dr. Topp expects to occur, the cause of the injury and the basis for his testimony being his personal treatment of the Plaintiff. The Magistrate reviewed Plaintiff's other disclosures and observed that the Plaintiff was equally descriptive in the disclosure of the remaining non-retained expert witnesses.

10. By way of example, Plaintiff identified Dr. Reynaldo Pardo as the treating pain management physician who would testify as to causation, permanency and future treatment, and provided the detailed disclosure as follows:

> <u>Subject Matter</u>: Dr. Pardo is board certified in anesthesiology and licensed to practice as a pain management physician. He will testify as to the Plaintiff's injuries to his lumbar, thoracic and cervical spine, and Plaintiff's treatment and procedures performed on the Plaintiff's lumbar, thoracic and cervical spine due to his injuries from the subject accident. He will also address Plaintiff's initial treatment at the Emergency Room of Baptist Medical Center South following the accident as well as testify as to his review of the imaging and xrays. His opinions are attained directly from his treatment of the Plaintiff and his review of the Plaintiff's medical records. His opinions pertaining to causation of the injury and future treatment are described in his affidavit attached hereto as Exhibit "C". He will testify pertaining to the Plaintiff's pain, injury, cause of injury, follow up condition of Plaintiff after pain management procedures and surgery, limitations, present and future impairment, future need for pain management treatment, as well as future expected limitations. He will also testify as to the EMG/NCS performed by Dr. Asad in May of 2017 of Plaintiff's lower extremities, and as to Plaintiff's permanent impairment as a result of the injuries.
> <u>Summary of Facts and Opinions</u>: Dr. Pardo will testify that that on July 11, 2017, Plaintiff initially presented to his office for back pain, right hip pain, right

leg pain, right groin pain, neck pain, occipital pain, and shoulder blade pain. He will testify to performing several pain management procedures on the Plaintiff including an L5-S1 lumbar epidural steroid injection, lumbar medial branch nerve block, lumbar epidural steroid injections, and lumbar facet injections over a period of several months. Dr. Pardo will testify that the Plaintiff received little to no relief from these procedures.

As a result, Dr. Pardo will testify he referred Plaintiff to surgeon Dr. Constantine Toumbis who recommended a lumbar fusion. He then referred Plaintiff to Dr. Raymond F. Topp, MD for a second opinion. He will testify Dr. Topp also recommended a lumbar fusion and ultimately performed the lumbar fusion.

Dr. Pardo will testify in November 2018 he performed a lumbar radiofrequency ablation/lesion ("RFL") on the left side of Plaintiff's spine. This treatment provided four months of relief. In April 2019, Dr. Pardo performed a right and left sided RFL which brought additional pain relief. Dr. Pardo will testify he has prescribed Doxepin 50 mg to help the Plaintiff sleep, and Ibuprofen 800 mg (2 per day) for pain since the RFL pain relief began to wear off. He will also testify as to the chiropractic and physical therapy Plaintiff received as well as the various medications Plaintiff was prescribed as further set forth in his medical records. He will also testify as to Dr. Syed Asad's diagnosis of a post-concussion syndrome and impaired cognition of the Plaintiff following the accident.

As per Dr. Pardo's affidavit attached hereto as Exhibit "C", he will testify that the subject auto accident caused the injuries to Plaintiff's cervical, thoracic and lumbar spine. He will testify that these injuries caused by the subject auto accident did not pre-exist the subject auto accident. He will testify to his review of the lumbar MRIs and xrays as well as the cervical spine xray. He will testify as to the specific injuries to Plaintiff's lumbar spine caused by the accident including a 2 mm protruding disc herniation indenting the anterior thecal sac with spinal canal narrowing at T12-L1; annular bulge encroaching upon foraminal at L2-3; mild facet joint arthropathy, predominantly on the right side at L3-4; bilateral facet joint arthropathy at L4-5; circumferential disc bulge resulting in bilateral foraminal stenosis in combination with anterior L5 subluxation encroaching upon the L5 nerve roots bilaterally.

He will testify that he diagnosed the Plaintiff with lumbar facet joint pain arthropathy, cervical spine ligament sprain, lumbar spondylolisthesis, lumbosacral disc degeneration, lumbar myelopathy, lumbar spinal stenosis, radiculopathy, and spondylosis. He will testify that the injuries to the Plaintiff's lumbar are permanent injuries. He will testify that the injury to the Plaintiff's cervical spine was a temporary injury that has resolved through chiropractic treatment and physical therapy. He will testify that there was a straightening of the normal cervical lordosis according to the cervical spine xray as well as a diagnosis of a sprain and strain of the cervical spine. He will testify there was evidence of muscle spasms throughout Plaintiff's cervical, thoracic and lumbar spine.

As set forth in **Exhibit "C"**, Dr. Pardo will testify as a result of the Plaintiff's injuries and ongoing pain, the Plaintiff will need future pain management treatment for the remainder of his life as follows: pain management office visits approximately 12 times per year; urine drug screen tests approximately 4-6 times per year; narcotic pain medication including but not limited to oxycodone/acetaminophen (10-325) approximately 45 pills per month for the remainder of his life; bilateral 3-level lumbar radiofrequency ablation 1 time over his life time; physical therapy/chiropractic care 24 times per year for the remainder of his life.

12. The Defendant's Objection to the Magistrate's decision is without merit and should be overruled and the Magistrate's decision upheld.

## MEMORANDUM OF LAW AND ARGUMENT

The instant case is strikingly similar to Hinson v. United States, 2019 U.S. Dist. Lexis 111022, *9 (M.D. Fla. July 3, 2019). In Hinson, the plaintiff was injured in a motor vehicle collision caused by a USPS driver. Id. at * 1. USPS moved for summary judgment on the issue of causation of injury. Id. at * 5. In support thereof, USPS took the position that the disclosure of Hinson's treating physicians were insufficient to testify as to causation, and Hinson could not offer any other evidence in support of causation. Id. As well, USPS moved in limine to preclude the treating physicians from testifying as to causation at trial. Id. In relevant part Hinson's disclosures included the following:

> Dr. Heldreth. It is anticipated that, based only upon his examination and treatment of [Hinson], Dr. Heldreth will opine that the care and treatment provided at Total Vitality Medial Group for those injuries was reasonable, necessary and related to the motor vehicle collision.
>
> Dr. Bansal. It is anticipated that, based only upon his examination and treatment of [Hinson], Dr. Bansal will opine that: [Hinson] suffered personal injuries to his right shoulder and right knee as a direct result of the subject incident; [Hinson] suffered aggravation of preexisting medical arthritic condition of his right knee as a direct result of the subject incident; … and the care and treatment [Hinson] received by Dr. Bansal for those injuries and aggravations were reasonable, necessary and related to the

6

>   injuries sustained in the motor vehicle collision.
>
>   Dr. Weber. It is anticipated that, based only upon his examination and treatment of [Hinson], Dr. Weber will opine that: [Hinson] suffered personal injuries to his cervical spine and lumbar spine as a direct result of the subject incident, including but not limited to cervical myelopathy and is at risk for a devastating neurologic injury; … and the care and treatment [Hinson] received by Dr. Weber for those injuries were reasonable, necessary and related to the spinal injuries sustained in the motor vehicle collision.

Identical to the instant case, USPS argued that these disclosures "failed to sufficiently provide 'a summary of facts and opinions to which the witness is expected to testify'". Id at 10. However, the Hinson court, rejected USPS' arguments.

>   [U]pon review of the summary of facts and opinions for each physician, the Court believes that the second amended disclosures are sufficient for Dr. Heldreth, Dr. Weber and Dr. Banal. This is not a situation in which the disclosure merely contains broad, general information on the treating physician and his planned testimony.

Id. at 11.

>   …
>
>   [The] descriptions in Hinson's second amended disclosures are thorough and provide a clear picture of the treatment each physician provided, what materials each physician reviewed, and the opinions each physician plans to offer at trial.

Id. at 12 – 13.

In the instant case, the Defendant filed a Notice of Supplemental Authority citing to the case of Nosewicz v. Janosko, 2019 WL 4248895 (D. Colo. 2019). Nosewicz is distinguishable from the case at bar and from Hinson v. United States, 2019 U.S. Dist. Lexis 111022 (M.D. Fla. July 3, 2019). In Nosewicz, the Court held the Plaintiff's non-retained treating physician's opinions were not substantiated by his own medical records. Id. at *5. Further, the manner in which the injury occurred was not addressed in the treating physician's records. Therefore opinions

rendered by the doctor as to how the injury occurred appeared to be outside the scope of treatment. However, this is not the situation in the case at bar. In fact, the Defendant has never asserted that Drs. Topp and Pardo's summary of opinions were not described within their medical records. In fact, the occurrence of the vehicle crash was mentioned several times throughout the records and relied upon by the doctors in formulating their diagnosis and treatment plans. The opinions as to causation were part-in-parcel of the care they rendered.

The Nosewicz court also found it unpersuasive that the plaintiff had referred to a "large swatch of medical records" in his disclosures but failed to identify any specific record or identify facts that formed the basis for the treating physician's proffered opinions. As can be seen in the Plaintiff's disclosures, facts supporting the treating physicians' opinion are set forth in detail and explained. Plaintiff's disclosures provide much more detail about the pertinent facts of the treating physician's testimony than the disclosures in Nosewicz. For these reasons, Nosewicz is distinguishable from the case at bar.

In Coleman v. Am. Family Mut. Ins. Co., 274 F.R.D. 641, *7 (N.D. IN 2011), the Federal Northern District of Indiana Court analyzed whether the plaintiff's treating physician's testimony as to causation of injury should be stricken as he was not identified as a retained expert and the plaintiff did not provide a summary of the facts and opinions the treating physician would provide at trial. The Court opined that the "determining factor is whether the physician determined the cause of the individual's injuries during or after treatment." Id. The Court held that if the treating physicians determined the cause of the individual's injuries while providing treatment to the plaintiff, the treating physicians were not required to produce a written report and were not deemed as retained experts. Id. at *8 (citing Meyers, 619 F.3d at 734-35). There was no evidence in the

record that the plaintiff sought treatment from the physicians for any purpose other than treatment. Id. The Court required the plaintiff to provide a summary of the facts and opinions of the treating physicians, but otherwise allowed the treating physicians to testify as to causation of injury at trial. Id.

In Harms v. United States, 2017 U.S. Dist. Lexis 135775, *23 (E.D. MI 2017), the United States sought to strike the causation testimony of a treating surgeon who was not retained and did not submit an expert report. The court noted that the surgeon's testimony that the plaintiff's pain was accident related as opposed to being related to pre-existing degenerative conditions impacted how the surgeon treated his patient. Id. at 24. Accordingly, the United States' motion to strike the treater's causation testimony was denied. Id. at 30-31.

In the same manner, the description of both Dr. Pardo's and Dr. Topp's testimony indicates that they both considered causation of Mr. Triolo's injury during treatment of Mr. Triolo. The Defendant has not produced record evidence that Mr. Triolo sought treatment from Drs. Pardo and Topp for a purpose other than treatment.

The Federal Third Circuit has applied a similar logic to personal injury cases. In Matlin v. Lanakow, 65 F. App'x 373, 384 (3d Cir. 2003), the treating physician examined the plaintiff without the benefit of his medical history, and determined the accident caused the plaintiff's injury. The Court allowed the treating physician to testify to causation of injury as a non-retained treating physician without a written report. In so doing the court correctly stated:

> …[I]magine a patient who comes in with medical records that include x-rays showing a fractured arm and who tells the doctor that he hurt the arm in a biking accident; the doctor could reliably conclude that the patient had a fractured arm caused by a biking accident even without physically examining the patient or taking

> a medical history. The biking accident is so much more likely to have been the cause of the fracture than anything else that there is no need to examine alternatives.

Id. at 29-30.

In Garcia v. City of Springfield Police Dep't, 230 F.R.D. 247, 248 (D. Mass. 2005), the District Court of Massachusetts referred to its precedential treatment of treating physicians as "excessively stringent". The court stated:

> so long as the expert care-provider's testimony about causation and prognosis is based on personal knowledge and observations obtained during the course of care and treatment, and he or she was not specially retained in connection with the litigation or for trial, a Rule 26 expert report is not necessary."

Id. at 249, citing, Gomez v. Rivera Rodriquez, 344 F.3d 103, 113 (1st Cir. 2003). See also, Sprague vs. Liberty Mut. Ins. Co., 177 F.R.D. 78 at 80 ("The majority of …courts in the country have concluded that rule 26(a)(2)(B) reports are not required as a prerequisite to a treating physician express opinions as to causation, diagnosis, prognosis and extent of disability where they are based on the treatment."); Salas v. United States, 165 F.R.D. 31, 33 (W.D. N.Y. 1995) ("Treating physicians' opinions and expert inferences arising from treatment commonly include issues of causation and prognosis. As a general rule, a treating physician considers not just the plaintiff's diagnosis and prognosis, but also the cause of the plaintiff's injuries."); Kent v. Katz, 2000 U.S. Dist. Lexis 22034 (D. VT. 2000) ("Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any caused by the condition or injury. Opinions as to these matters are encompassed in the ordinary care of a patient and do not subject the treating physician to the reporting requirement of Rule 26(a)(2)(B)."); Shepardon v. West Beach Estates, 172 F.R.D. 415, 416-417 (D. Haw. 1997);

Piper v. Harnischfeger Corp., 170 F.R.D. 173, 175 (D. Nev. 1997)("It is common place for a treating physician during, and as part of, the course of treatment of a patient to consider things such as the cause of the medical condition, the diagnosis, the prognosis and the extent of disability caused by the condition, if any. Opinions such as these are a part of the ordinary care of the patient and do not subject the treating physician to the extensive reporting requirements of Fed. R. Civ. P. 26(a)(2)(B)."

## CONCLUSION

The Magistrate Judge conducted an extensive review of the Plaintiff's Expert Witness Disclosures and determined that the Plaintiff successfully fulfilled the requirements of Rule 26(a)(2)(C), and denied the Defendant's Motion to Strike. In so doing the Magistrate Judge compared the disclosures that were approved in Hinson to the disclosures in the instant case. Clearly the Plaintiff went well beyond the disclosures in Hinson. Further, the case law from around the country overwhelmingly supports the Magistrate's decision. Accordingly, the Defendant's objection to the Magistrate's Order should be overruled.

By:/s/*Philip S. Kinney*
 Philip S. Kinney, Esq.
 Fla. Bar No.: 0709611
 Benjamin C. Moore, Esq.
 Florida Bar No. 773581
 *Kinney & Moore, PLLC*
 9191 R.G. Skinner Pkwy., Suite 703
 Jacksonville, Florida 32256
 Tel: (904) 642-4111
 Fax: (904) 329-1875
 Email: Philip@JaxLitigation.com
 E-mail: Ben@JaxLitigation.com
 Secondary: Heather@JaxLitigation.com

 Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 10th day of October, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties listed in the service list via transmission of Notices of Electronic Filing generated by CM/ECF.

Ronnie S. Carter, Esq.
Assistant United States Attorney
Trial Counsel
United State Courthouse
300 North Hogan Street, Suite 700
Jacksonville, FL 32202-4270
Primary: Ronnie.Carter@usdoj.gov
Secondary: Nicole.Schmidt2@usdoj.gov
 Chantal.Sabino@usdoj.gov
 Brittany.Robinson2@usdoj.gov
 Jaxdocket.mailbox@usdoj.gov

/s/*Philip S. Kinney*
Attorney