**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RICHARD A. TRIOLO,

        Plaintiff,

v.                                                            Case No. 3:18-cv-919-J-34JBT

UNITED STATES OF AMERICA,

        Defendant.

_____

## O R D E R

**THIS CAUSE** is before the Court on Plaintiff's Motion for Partial Summary Judgment as to Causation of Injury (Doc. 23; Motion), filed on September 5, 2019. Defendant filed a response in opposition to the Motion on September 19, 2019. See Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment as to Causation of Injury (Doc. 27; Response). In addition, on October 8, 2019, Defendant filed Defendant's Amended Daubert Motion to Exclude Opinions of Plaintiff's Non-Retained Expert Witnesses (Doc. 34; Motion to Exclude).[1] Plaintiff filed a response in opposition to the Motion to Exclude on November 1, 2019. See Plaintiff's Response to Defendant's Amended Daubert Motion to Exclude Opinions of Plaintiff's Non-Retained Expert Witnesses (Doc. 39; Response to Motion to Exclude). Accordingly, this matter is ripe for review.

---
[1] Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

**I.     Background**

On February 11, 2017, a United States Postal Service vehicle operated by Marsha Rentz, within the scope of her employment with the Postal Service, collided with a Ford Mustang operated by Plaintiff Richard A. Triolo in Jacksonville, Florida.  See Amended Complaint (Corrected) (Doc. 6; Am. Compl.) ¶¶ 7-13; Answer and Affirmative Defenses (Doc. 7) ¶¶ 5, 7, 9-13.  In the Motion, Triolo moves for partial summary judgment on the issue of whether the motor vehicle collision caused permanent injuries to Triolo's lumbar spine.  See Motion at 5.  In support, Triolo submits the affidavits of his pain management doctor, Reynaldo Pardo, M.D., and his treating orthopedic surgeon, Raymond F. Topp, M.D.  See Motion at 2-3, 4, Exs. A-B.  Below, the Court summarizes the entirety of the contents of these affidavits.

Pardo asserts that he has treated Triolo since July 11, 2017.  See Motion, Ex. A: Affidavit of Reynaldo Pardo, M.D. (Doc. 23-1; Pardo Aff.) ¶ 4.  According to Pardo, he has "performed several pain management procedures and prescribed medication" to Triolo in an effort to relieve the pain in his lumbar, thoracic and cervical spine regions.  Id. ¶ 6.  Pardo opines that:

> the impact from the automobile accident dated February 11, 2017 caused the following injuries to Mr. Triolo's lumbar spine:
> a. 2 mm protruding disc herniation indenting the anterior thecal sac with spinal canal narrowing at T12-L1
> b. Annular bulge encroaching upon foraminal at L2-3
> c. Mild facet joint arthropathy, predominately on the right side at L3-4
> d. Bilateral facet joint arthropathy at L4-5
> e. Circumferential disc bulge resulting in bilateral foraminal stenosis in combination with anterior L5 subluxation encroaching upon the L5 nerve roots bilaterally.

See id. ¶ 7.  Pardo does not explain how or why he came to hold these opinions, and provides no information or analysis in support of them.  Nonetheless, Pardo also maintains

that these injuries "are permanent in nature," "did not pre-exist" the February 11, 2017 accident, and will require "future pain management treatment for the remainder of [Triolo's] life . . . ." Id. ¶¶ 8-9, 11. In addition, Pardo states that Triolo sustained temporary injuries to his cervical spine, including muscle spasms, sprain and strain, as a result of the February 11, 2017 automobile accident. Id. ¶ 10. Pardo maintains that all of these opinions are based on his "training and specialization as a Board Certified Anesthesiologist and pain management doctor as well as [his] treatment of Richard Triolo," and are held "within a reasonable degree of medical probability." See id. ¶¶ 3, 7-11.

Topp's affidavit is based upon his "training and specialization as a Board Certified Orthopedic Surgeon as well as [his] treatment of and surgery on [Triolo] . . . ." See Motion, Ex. B: Affidavit of Raymond Topp, M.D. (Doc. 23-2; Topp Aff.) ¶ 3. Topp began treating Triolo on approximately November 8, 2017, when Triolo presented to his office "with complaints of lower back pain radiating into right lower extremities after unsuccessfully attempting to obtain relief from conservative treatments such as chiropractic and pain management modalities and procedures." Id. ¶¶ 4-5. Topp asserts that "[o]n March 22, 2018, [he] performed a posterior lumbar interbody fusion surgery ('PLIF') at L5-S1 on Mr. Triolo due to constant pain radiating posteriorly down his thigh and sometimes anteriorly to the hip flexor." Id. ¶ 6. Topp holds the opinion that the February 11, 2017 accident caused the injury to Triolo's lumbar spine which necessitated the surgery. Id. ¶ 7. Topp also asserts that the impact from the accident caused the same injuries to Triolo's lumbar spine listed above, as well as "SI joint dysfunction secondary to surgery." Id. ¶ 8. According to Topp, these injuries are "permanent in nature," "did not pre-exist the date of this accident," and will require "future orthopedic treatment for the remainder of [Triolo's] life . .

3

. ." Id. ¶¶ 9-11. Topp states that he holds all of these opinions "within a reasonable degree of medical probability." Id. ¶¶ 7-11. Notably, Topp provides no explanation or analysis as to how or why he reached these opinions, nor does he identify the information in Triolo's medical records that purportedly support them.

## II. Summary Judgment

### A. Applicable Law

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[2] An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment."

---

[2] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### B. Discussion

In the Motion, Plaintiff asserts that he has "presented sufficient evidence to carry [his] burden of proof as to causation and permanency of injury to the lumbar spine" based on the Affidavits of Topp and Pardo. See Motion at 4. In response, Defendant presents no evidence contradicting the opinions of Topp and Pardo. See generally Response. Instead, Defendant argues that the affidavits fail to set out any facts and are therefore not

competent evidence for consideration on summary judgment.  See Response at 4 n.1.  In addition, Defendant maintains that Plaintiff's Motion should be denied because the expert opinions on which Plaintiff relies are inadmissible under Rule 702, Federal Rules of Evidence (Evidence Rule(s)) and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  See Response at 4-8.

As stated above, the moving party, here Triolo, "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  See Clark, 929 F.2d at 608.  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Id.  Significantly, for issues on which the movant bears the burden of proof at trial, "that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial."  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991)).  Thus, even where a defendant has not presented any evidence in opposition to a motion for summary judgment, the Court still must first determine whether the plaintiff has satisfied the initial burden of presenting credible evidence on the relevant issue.  Here, that means the Court must determine whether Plaintiff has presented credible evidence on the issues of causation and permanency.

Upon review, the Court finds that the Topp and Pardo Affidavits are entirely insufficient to satisfy Plaintiff's burden.  The Eleventh Circuit Court of Appeals has "consistently held" that affidavits containing "conclusory allegations without specific

6

supporting facts have no probative value." See Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985); see also Cornelius v. Home Comings Fin. Network, Inc., 293 F. App'x 723, 728 (11th Cir. 2008) ("To have any probative value, affidavits must be supported by specific facts, not conclusory allegations."); Hilburn v. Murata Elec. N. Am., Inc., 181 F.3d 1220, 1227-28 (11th Cir. 1999) (finding doctor's conclusory statement that plaintiff was impaired, "devoid of any specific facts whatsoever which support the conclusion," was insufficient evidence of plaintiff's impairment). The Affidavits offered in support of Plaintiff's Motion suffer from precisely this defect. As described above, Pardo and Topp provide conclusory opinions about the nature and cause of Plaintiff's injuries without reference to any supporting facts. Absent any indication of the specific facts which purportedly support their opinions, the Pardo and Topp Affidavits have no probative value and therefore cannot satisfy Plaintiff's burden in seeking entry of summary judgment. As Plaintiff fails to provide competent evidence to satisfy his initial burden as the party seeking summary judgment, the Motion is due to be denied. See Fitzpatrick, 2 F.3d at 1116 ("If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made.").

## III. Motion to Exclude

In the Motion to Exclude, Defendant asserts that the Court should exclude or limit the opinions on causation, prognosis, permanency, future medical care, and pre-existing conditions offered by Topp and Pardo as unreliable because "there is no evidence that they are based on any methodology, much less an established methodology." See Motion to Exclude at 2.[3] In response, Plaintiff asserts that "[a] treating physician who derives his

---

[3] Defendant also moves to exclude the opinion of Michael Cochran, an auto-repair technician, on the force of the impact to Plaintiff's vehicle. See Motion to Exclude at 2. In the Motion to Exclude, Defendant

7

opinions during the treatment of the Plaintiff is not subject to Daubert analysis, unless the treating physician expresses an opinion 'unrelated to treatment and based on scientific, technical, or other specialized knowledge, that a witness offers expert testimony for which the Court must perform its essential gatekeeping function as required by Daubert.'" See Response to Motion to Exclude at 3 (quoting Jones v. Discount Auto Parts, LLC, No. 6:16-cv-138-Orl-37KRS, 2017 WL 1396477, at *9 n.12 (M.D. Fla. Apr. 19, 2017)). As such, Plaintiff maintains that its non-retained, treating physicians whose opinions are derived from their treatment of Plaintiff are not subject to the Daubert standards. Id. Alternatively, Plaintiff maintains that if the Court finds that Daubert does apply, the Court should "conduct an evidentiary hearing in order to assess the reliability of the methodology." Id. at 6-7.

In resolving Defendant's Motion to Exclude, the Court must first determine whether Plaintiff's non-retained, treating physicians are offering lay or expert testimony. In Williams v. Mast Biosurgery USA, Inc., 644 F.3d 1312 (11th Cir. 2011), the Eleventh Circuit addressed this distinction and discussed the "special evidentiary problems" presented by the testimony of treating physicians as follows:

> Much of the testimony proffered by treating physicians is an account of their experience in the course of providing care to their patients. Often, however, their proffered testimony can go beyond that sphere and purport to provide explanations of scientific and technical information not grounded in their own observations and technical experience. When such a situation presents itself, the trial court must determine whether testimony not grounded in the physician's own experience meets the standard for admission as expert testimony.

---

represents that Plaintiff agreed not to ask Cochran at trial about the force of impact. Id. at 12. On October 8, 2019, Plaintiff filed a notice withdrawing the portion of its expert witness disclosure concerning Cochran which stated that he would testify that the damage to the vehicle indicated a hard impact. See Plaintiff's Notice of Withdrawing Portion of Expert Witness Disclosure from Auto Repair Tech Michael Cochran (Doc. 33). Accordingly, the Court will grant the Motion to Exclude as to Cochran pursuant to the parties' agreement.

See Williams, 644 F.3d at 1316-17. The Williams court quoted from Davoll v. Webb, 194 F.3d 1116 (10th Cir. 1999) for the proposition that "'[a] treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party.'" Id. at 1317 (emphasis added) (quoting Davoll, 194 F.3d at 1138); see also Wilson v. Taser Int'l, Inc., 303 F. App'x 708, 712-13 (11th Cir. 2008) (holding that treating physician's testimony "regarding his diagnosis of the injury itself . . . would be permissible as lay testimony without the Daubert analysis, but his statement about the cause of the injury was an [sic] hypothesis" subject to Evidence Rule 702 and Daubert). Indeed, "a physician may offer lay opinion testimony, consistent with [Evidence Rule 701], when the opinion is 'based on his experience as a physician and [is] clearly helpful to an understanding of his decision making process in the situation.'" Williams, 644 F.3d at 1317 (second alteration in original) (quoting Weese v. Schukman, 98 F.3d 542, 550 (10th Cir. 1996)). However, "when a treating physician's testimony is based on a hypothesis, not the experience of treating the patient, it crosses the line from lay to expert testimony, and it must comply with the requirements of [Evidence] Rule 702 and the strictures of Daubert." Id. at 1317-18; Wilson, 303 F. App'x at 712-13 (explaining that treating physician's causation opinion "was not needed to explain his decision making process, nor did it pertain to [plaintiff's] treatment," and as such, amounted to expert testimony subject to Daubert).

On the current record, and without hearing their testimony, the Court is unable to determine whether Topp and Pardo formed the challenged opinions in connection with, and as necessary to, their treatment of Plaintiff, or whether they developed these opinions as a hypothesis, separate from their experience in treating Plaintiff. As such, it is unclear whether Topp and Pardo's opinions are subject to Evidence Rule 702 and the Daubert

9

standards.  Regardless, even to the extent <u>Daubert</u> applies, this matter is set for a non-jury trial, such that "the gatekeeping purpose of <u>Daubert</u> is not implicated."  <u>Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.</u>, 616 F. Supp. 2d 1250, 1256 (M.D. Fla. 2009); <u>United States v. Brown</u>, 415 F.3d 1257 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for [her]self.").  "Indeed, in the context of a non-jury trial, the district court may allow challenged expert testimony to be presented and then later determine issues of admissibility and reliability."  <u>Johnson & Johnson</u>, 616 F. Supp. 2d at 1256.  As such, the Court finds that the appropriate course is to deny the Motion to Exclude as to Topp and Pardo without prejudice to renewal at trial, if warranted.[4]  In light of the foregoing, it is

**ORDERED:**

1. Plaintiff's Motion for Partial Summary Judgment as to Causation of Injury (Doc. 23) is **DENIED**.

---

[4] The Court notes that in the event Topp and Pardo seek to opine on issues that cross into the realm of expert testimony, a <u>Daubert</u> inquiry may still be unnecessary as Plaintiff did not disclose expert reports under Rule 26(a)(2)(B) for these witnesses.  As such, "any testimony exceeding the scope of the physician's care and treatment will be excluded—not because of deficiencies in <u>Daubert</u> requirements—but for plaintiff's failure to provide a written report."  <u>See</u> <u>Bryan v. Whitfield</u>, No. 3:14-cv-341/MCR/EMT, 2015 WL 11109792, at *3 (N.D. Fla. July 15, 2015) ("Defendants' argument fails to recognize that a <u>Daubert</u> inquiry is unnecessary in instances where the plaintiff fails to identify a treating physician as a 'retained expert' pursuant to Fed. R. Civ. P. 26(a)(2)(B), and yet seeks to admit certain testimony that crosses over into the realm of expert testimony."); <u>see</u> <u>also</u> <u>Kondragunta v. Ace Doran Hauling & Rigging Co.</u>, No. 1:11-cv-01094-JEC, 2013 WL 1189493, at *10 (N.D. Ga. Mar. 21, 2013) ("[I]f a physician's opinion regarding causation or any other matter was formed and based on observations made during the course of treatment, then no Subsection B report is required . . . .  If, however, the physician's opinion was based on facts gathered outside the course of treatment, or if the physician's testimony will involve the use of hypotheticals, then a full subsection B report will be required." (internal citations omitted)).  Although "the Eleventh Circuit has found that causation opinions <u>typically</u> fall outside the scope of a treating physician's care and treatment and thus cross the line from lay to expert testimony," <u>Bryan</u>, 2015 WL 11109792, at *3 (emphasis added) (collecting cases), the Court can only make this determination after hearing the testimony of the experts at the non-jury trial.

2. Defendant's Amended <u>Daubert</u> Motion to Exclude Opinions of Plaintiff's Non-Retained Expert Witnesses (Doc. 34) is **GRANTED, in part, and DENIED without prejudice, in part.**

    A. The Motion is **GRANTED** to the extent Michael Cochran's opinions as to the force of the impact to Plaintiff's vehicle are excluded from the trial in this case, as agreed to by the parties.

    B. The Motion is otherwise **DENIED without prejudice** to raising an appropriate objection at trial, if warranted.

    **DONE AND ORDERED** at Jacksonville, Florida this 7th day of January, 2020.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

lc11
Copies to:

Counsel of Record