UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICHARD A. TRIOLO,

    Plaintiff,

v.                                    Case No. 3:18-cv-919-J-34JBT

UNITED STATES OF AMERICA,

    Defendant.
_____/

**PRETRIAL STATEMENT**

The Parties submit this pretrial statement pursuant to the Case Management and Scheduling Order (Doc. 11) and Local Rule 3.06(c).

1. **Basis of federal jurisdiction**

The basis of federal jurisdiction is the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(b)(1). Venue is proper pursuant to 28 U.S.C. § 1391(e) and § 1402(b) because the accident occurred within the Middle District of Florida.

2. **Concise statement of the nature of the action**

This case concerns a rear end motor vehicle accident that occurred on February 11, 2017, between a vehicle driven by the Plaintiff, Richard Triolo, and a United States Postal Service vehicle driven by Marsha Rentz. Plaintiff Triolo contends he sustained a permanent injury caused by the motor vehicle accident, which will require future medical treatment. Defendant contests causation and damages.

3.  **General statement of each party's case**

   a.  Plaintiff:

This is an automobile collision case. On November 3, 2017, an employee of the United States Postal Service was operating a USPS vehicle in the course and scope of her employment. The USPS employee failed to stop her vehicle and collided into the rear of Plaintiff's vehicle. The Postal Service investigated the collision and determined the driver of the USPS vehicle, Rentz, was at fault. Ms. Rentz testified in her deposition that she collided into the rear of Mr. Triolo's vehicle.

Mr. Triolo sustained permanent injuries that have resulted in back surgery and ongoing pain management procedures to treat his injuries and pain. Mr. Triolo did not have any pre-existing injuries involving his lumbar spine. Mr. Triolo will require future medical services and incur medical expenses in the future. Mr. Triolo has suffered significant limitations which will be ongoing.

Plaintiff is presenting several treating physicians who will testify as to Plaintiff's injuries sustained in the collision, his past treatment, and his future treatment. Plaintiff is also presenting a retained life care planner who will testify as to Plaintiff's future medical bills. Defendant does not have any experts.

   b.  Defendant:

The accident in issue in this litigation occurred on Saturday, February 11, 2017, at approximately 1:00 pm, at the intersection of Loretto Road and Old St. Augustine Road in Jacksonville, Florida. Plaintiff Richard Triolo and United States Postal Service employee Marsha Rentz were at a complete stop at a red light. Triolo was in the vehicle

ahead of Rentz. Rentz's foot slipped off the brake pedal and, without her pressing the accelerator, the mail truck hit the rear bumper of Triolo's 2016 Ford Mustang, damaging it slightly. There was minimal damage to the mail truck. No injuries were reported at the scene. Defendant contests that the instant accident caused the injuries claimed by Plaintiff.

4. **Exhibits to be offered at trial**

   a. <u>Plaintiff</u>: Plaintiff's Exhibit List is attached as Exhibit A.

   b. <u>Defendant</u>: Defendant's Exhibit List is attached as Exhibit B.

   c. Due to present circumstances, the parties have not yet been able to exchange exhibits. The parties will do so prior to trial so that any objections can be noted and a joint exhibit list can be agreed upon, if possible.

   d. In addition, both Parties anticipate using demonstrative evidence at trial. The Parties agree to produce any demonstrative evidence to the other party prior to trial at a mutually agreeable time.

5. **Witnesses who may be called at trial**

   a. <u>Plaintiff</u>: Plaintiff's Witness List is attached as Exhibit C.

   b. <u>Defendant</u>: Defendant's Witness List is attached as Exhibit D.

6. **Expert witnesses and statements of subject matter and substance of testimony**

   a. Plaintiff's experts:

Retained Testifying Expert

   i. Gil Spruance, MS, CRC, CVE, VE, CLCP, MSCC
   Spruance & Associates, Inc.
   4604 Atlantic Boulevard, Suite 1B
   Jacksonville, FL 32207

   Subject Matter: Life Care Planner/Future Cost of Medical Treatment

   Statement of Facts and Opinions: Mr. Spruance is expected to testify about the cost of past and future medical care as detailed in the Life Care Plan he prepared relating to the Plaintiff. Mr. Spruance is not a licensed medical provider. Accordingly, his opinions do not include recommendations of medical treatment. Rather, his opinions are the expected future costs of the treatment recommended by the Plaintiff's medical providers, which include, but is not limited to chiropractic care, physical therapy, pain management/pain control, and future surgery. The Plaintiff further expects Mr. Spruance to testify about the Plaintiff's limitations, restrictions, and any and all accommodations that are necessary as a result of the permanent injuries and care caused by the crash in this care as listed in the Life Care Plan for the remainder of his life. He will testify as to Plaintiff's life expectancy and perform calculations as to the total annual low, mid, and high costs of Plaintiff's ongoing medical treatment as well as one- time costs for Plaintiff's future medical treatment.

Non-Retained Testifying Treating Physicians

   ii. Dr. Raymond Topp, M.D.
   3316 S. 3rd Street
   Jacksonville Beach, FL 32250
   Phone: (904) 719-7404

   Subject Matter: Dr. Topp is a board-certified orthopedic surgeon who will testify as to his treatment on the Plaintiff's lumbar spine, and his performance of a posterior lumbar interbody fusion surgery ("PLIF") on the Plaintiff at L5-S1 due to his injuries from the subject accident. His opinions are attained directly from his treatment of the Plaintiff, and his opinions pertaining to causation of the injury and future treatment are described in his affidavit and

medical records. He will testify pertaining to the Plaintiff's pain, injury, cause of injury, surgery performed on Plaintiff, follow up condition of Plaintiff after surgery including his home health care, the status of his fusion as demonstrated in the 8-30-18 MRI of Plaintiff's lumbar spine, Plaintiff's resulting limitations, present and future impairment, future need for treatment as well as future expected limitations.

<u>Summary of Facts and Opinions</u>: Dr. Topp will testify he initially saw the Plaintiff on November 8, 2017 and recommended surgery. He will testify on March 22, 2018 he performed an L5-S1 posterior lumbar interbody fusion surgery due to Plaintiff's pain which was not being relieved by other chiropractic and pain management treatment and modalities. Subsequent to the surgery, he will testify that Plaintiff experienced complications and ongoing pain, and Dr. Topp administered an L5-S1 epidural steroid injection in September 2018 which was not beneficial. Dr. Topp will testify that the injuries to the Plaintiff's lumbar spine were caused by the subject accident. He will testify that the injuries to his lumbar spine are permanent in nature. He will also testify that the injuries to his lumbar spine did not pre-exist the subject accident. He will testify that the L5-S1 fusion was reasonable and related to the injuries Plaintiff received from the subject accident. He will also testify that the Plaintiff will need a future lumbar fusion extension as a result of the accident, and that the Plaintiff will need a follow up visit to an orthopedic physician at least one time per year with x-rays. He will testify to the findings of the imaging and x-rays of the Plaintiff's lumbar spine prior to the surgery. He will testify as to the current condition of the Plaintiff's lumbar spine as displayed in the 8-30-18 MRI which shows the prior PLIF without complications, a T12-L1 disc herniation indenting the thecal sac with high signal annular fissure, enhancing fibrosis within right lateral recess and neural foramen at L5-S1. He will also testify that the Plaintiff has an SI joint dysfunction secondary to surgery which is permanent in nature.

He will also testify as to writing a leave of absence excuse for Plaintiff post-surgery for several weeks. He will also testify that the Plaintiff may need another lumbar spine surgery in the future. His testimony will be based upon his treatment of the Plaintiff as described in his medical records, medical bills, and his affidavit.

**Summary from Life Care Plan:**

| Total Annual Low Costs | Total Annual Mid Costs | Total Annual High Costs | Total One Time Low Costs |
|---|---|---|---|
| $14,649.80 | $20,502.80 | $26,355.80 | $155,552.00 |

Total Annual Low Costs: $14,649.80   x 35.2 years = **$515,672.96**

Total Annual Mid Costs:   $20,502.80 x 35.2 years =   **$721,698.56**

Total Annual High Costs: $26,355.80 x 35.2 years =   **$927,724.16**

| Total One Time Mid Costs | Total One Time High Costs |
|---|---|
| $165,904.50 | $176.257.00 |

 iii. Dr. Reynaldo Pardo, M.D.
   St. Joseph Interventional Pain Specialists
   12078 San Jose Blvd., Suite 2, Jacksonville, FL 32223
   Jacksonville, FL 32223

Subject Matter: Dr. Pardo is board certified in anesthesiology and licensed to practice as a pain management physician. He will testify as to the Plaintiff's injuries to his lumbar, thoracic and cervical spine, and Plaintiff's treatment and procedures performed on the Plaintiff's lumbar, thoracic and cervical spine due to his injuries from the subject accident. He will also address Plaintiff's initial treatment at the Emergency Room of Baptist Medical Center South following the accident as well as testify as to his review of the imaging and xrays. His opinions are attained directly from his treatment of the Plaintiff and his review of the Plaintiff's medical records. His opinions pertaining to causation of the injury and future treatment are described in his affidavit. He will testify pertaining to the Plaintiff's pain, injury, cause of injury, follow up condition of Plaintiff after pain management procedures and surgery, limitations, present and future impairment, future need for pain management treatment, as well as future expected limitations. He will also testify as to the EMG/NCS performed by Dr. Asad in May of 2017 of Plaintiff's lower extremities, and as to Plaintiff's permanent impairment as a result of the injuries.

Summary of Facts and Opinions: Dr. Pardo will testify that that on July 11, 2017, Plaintiff initially presented to his office for back pain, right hip pain, right leg pain, right groin pain, neck pain, occipital pain, and shoulder blade pain. He will testify to performing several pain management procedures on the Plaintiff including an L5-S1 lumbar epidural steroid injection, lumbar medial branch nerve block, lumbar epidural steroid injections, and lumbar facet injections over a period of several months. Dr. Pardo will testify that the Plaintiff received little to no relief from these procedures.

As a result, Dr. Pardo will testify he referred Plaintiff to surgeon Dr. Constantine Toumbis who recommended a lumbar fusion. He then referred Plaintiff to Dr. Raymond F. Topp, MD for a second opinion. He will testify Dr. Topp also recommended a lumbar fusion and ultimately performed the lumbar fusion.

Dr. Pardo will testify in November 2018 he performed a lumbar radiofrequency ablation/lesion ("RFL") on the left side of Plaintiff's spine. This treatment provided four months of relief. In April 2019, Dr. Pardo performed a right and left sided RFL which brought additional pain relief. Dr. Pardo will testify he has prescribed Doxepin 50 mg to help the Plaintiff sleep, and Ibuprofen 800 mg (2 per day) for pain since the RFL pain relief began to wear off. He will also testify as to the chiropractic and physical therapy Plaintiff received as well as the various medications Plaintiff was prescribed as further set forth in his medical records. He will also testify as to Dr. Syed Asad's diagnosis of a post-concussion syndrome and impaired cognition of the Plaintiff following the accident.

He will testify that the subject auto accident caused the injuries to Plaintiff's cervical, thoracic and lumbar spine. He will testify that these injuries caused by the subject auto accident did not pre-exist the subject auto accident. He will testify to his review of the lumbar MRIs and xrays as well as the cervical spine xray. He will testify as to the specific injuries to Plaintiff's lumbar spine caused by the accident including a 2 mm protruding disc herniation indenting the anterior thecal sac with spinal canal narrowing at T12-L1; annular bulge encroaching upon foraminal at L2-3; mild facet joint arthropathy, predominantly on the right side at L3-4; bilateral facet joint arthropathy at L4-5; circumferential disc bulge resulting in bilateral foraminal stenosis in combination with anterior L5 subluxation encroaching upon the L5 nerve roots bilaterally.

He will testify that he diagnosed the Plaintiff with lumbar facet joint pain arthropathy, cervical spine ligament sprain, lumbar spondylolisthesis, lumbosacral disc degeneration, lumbar myelopathy, lumbar spinal stenosis, radiculopathy, and spondylosis. He will testify that the injuries to the Plaintiff's lumbar are permanent injuries. He will testify that the injury to the Plaintiff's cervical spine was a temporary injury that has resolved through chiropractic treatment and physical therapy. He will testify that there was a straightening of the normal cervical lordosis according to the cervical spine xray as well as a diagnosis of a sprain and strain of the cervical spine. He will testify there was evidence of muscle spasms throughout Plaintiff's cervical, thoracic and lumbar spine.

Dr. Pardo will testify as a result of the Plaintiff's injuries and ongoing pain, the Plaintiff will need future pain management treatment for the remainder of his life as follows: pain management office visits approximately 12 times per year; urine drug screen tests approximately 4-6 times per year; narcotic pain medication including but not limited to oxycodone/acetaminophen (10-325) approximately 45 pills per month for the remainder of his life; bilateral 3-level lumbar radiofrequency ablation 1 time over his life time; physical therapy/chiropractic care 24 times per year for the remainder of his life.

iv. Dr. David Priest, M.D.
    Advanced Diagnostic Group
    1465 Kingsley Avenue, Suite 104
    Orange Park, FL 32073
    Phone: (904) 458-0141

Subject Matter: Board Certified Radiologist from Advanced Diagnostic Group who performed imaging/xrays of Plaintiff's lumbar spine on April 4, 2018 post PLIF surgery.

Summary of Facts and Opinion: Dr. Priest will testify as to his findings on the lumbar MRI which showed anterolisthesis of L5 on S1, 5 millimeter grade 1 as well as the rod and screw fixation and discectomy at L5-S1. He will testify there was no evidence of appreciable hardware failure or loosening and no loss of vertebral body height as well as no severe degenerative change.

v. Dr. Kevin Jones, M.D.
    Precision Imaging Centers
    7860 Gate Parkway, Suite 123
    Jacksonville, FL 32256
    Phone: (904) 996-8100

Subject Matter: Board Certified Radiologist from Precision Imaging who performed an MRI of Plaintiff's lumbar spine on August 30, 2018.

Summary of Facts and Opinion: Dr. Jones will testify as to his findings on the lumbar MRI which showed prior fusion without recurrent stenosis or other complication evident; enhancing fibrosis within the L5-S1 right lateral recess and neural foramen; T12-L1 posterior disc herniation indenting thecal sac; high signal annular fissure.

    vi. Dr. Soheil Sooudi, M.D
       Baymeadows MRI
       502 Greenbrier Ave.
       Celebration, Florida 34747
       Phone: (321) 624-2089

Subject Matter: Board Certified Radiologist from Baymeadows MRI who performed an MRI of Plaintiff's lumbar spine on April 4, 2017.

Summary of Facts and Opinion: Dr. Sooudi will testify his review of the MRI showed a bilateral L5 spondylolysis with grade 1 spondylolisthesis at L5-S1; degenerative spondylosis with disc desiccation and disc space narrowing at L5-S1 level with circumferential disc bulge resulting in bilateral foraminal stenosis in combination with anterior L5 subluxation encroaching upon the L5 nerve roots; disc desiccation with disc space narrowing at T12-L1 level with protruding posterior disc herniation indenting the anterior thecal sac with spinal canal narrowing and no cord impingement; annular bulge at L2-3 and L3-4 levels encroaching upon foraminal with no spinal stenosis or nerve root impingement.

    vii. Dr. Assad Syed, M.D.
        Universal Neurological Care
        3636 University Blvd. South, Ste 52
        Jacksonville, FL 32214
        Phone: (904) 404-7044

Subject Matter: Board Certified Neurologist. He will testify as to his mini-mental status exam of the Plaintiff on March 21, 2017 and his follow up treatment. He will also testify based on his EMG/NCS of the bilateral lower extremities of the Plaintiff. His opinions are attained directly from his treatment of the Plaintiff.

Summary of Facts and Opinions: Dr. Syed will testify as to his diagnosis of the Plaintiff with a post-concussion syndrome and impaired cognition following the auto accident. He will testify that the Plaintiff had ongoing headaches and neck pain and complained of low back pain and right buttock pain. He will testify that the EMG/NCS of Plaintiff's bilateral lower extremities likely represent chronic proximal pathology such as radicular disease at the right L5-S1.

    viii.    Michael McDaniels, DC.
           Jacksonville Sport and Spine
           2233 Park Avenue, Suite 2008
           Orange Park, FL 32073
           Phone: (904) 375-1954

Subject Matter: He is a chiropractor who treated the Plaintiff for neck, mid back, and lower back pain after the accident and will testify as to his treatment, Plaintiff's pain complaints and limitations, and the outcome of Plaintiff's treatment for his neck, mid back and lower pain. His opinions are attained directly from his treatment of the Plaintiff.

Summary of Facts and Opinions: Dr. McDaniels will testify that the Plaintiff was experiencing, neck, mid back, and lower back pain as a result of the subject accident. He will testify that he diagnosed the Plaintiff with muscle spasms in the cervical, thoracic and lumbar region. He will testify that he diagnosed the Plaintiff with a thoracic sprain, lumbar sciatica, cervical disc disorder with radiculopathy, headaches, concussion, cervicobrachial syndrome, cervical spine pain. He will testify as to the modalities and treatment he performed on the Plaintiff and that it had limited success in reducing Plaintiff's ongoing pain in his lower back. He will testify the treatment did provide some relief as relates to Plaintiff's range of motion, stiffness, and temporary pain relief. He will testify that he assigned limitations to the Plaintiff including no lifting more than 15 pounds, no repetitive bending, no lifting with outstretched arms, no sitting for more than 20 minutes, no walking for more than 30 minutes, no leaning over a desk or a computer for more than 20 minutes without a break continually. He will also testify that he recommended the Plaintiff take two weeks off work in February 2017.

7. **Statement of elements of money damages**: The elements of damages the Plaintiff are claiming include the following:

    a.    Past medical expenses:    **$297,005.01** (ongoing)

    b.    Future medical expenses:    **$515,673.00 to $1,103,981.00**

    c.    Past Wage Loss:    **$6,461.69**

    d.    Past non-economic damages: **$150,000.00**

    e.    Future non-economic damages: **$250,000.00**

8. **Deposition Testimony to be offered in evidence at trial**

   a. The Parties reserve the right to use the deposition of any witness who becomes unavailable for trial as defined in Fed. R. Civ. P. 32.

   b. Plaintiff intends to offer the Deposition of Rentz (USPS driver). Defendant objects to the use of this deposition at trial except as permitted by the Federal Rules of Civil Procedure.

9. **Facts which are admitted and will require no proof at trial**

   a. On February 11, 2017, United States Postal Service employee Marsha Rentz was driving a mail truck (a Grumman Long Life Vehicle, or LLV) owned by the United States.

   b. On February 11, 2017, Richard Triolo was driving a 2006 Ford Mustang, which he owned.

   c. Mr. Triolo and Ms. Rentz were driving south on Old St. Augustine Road in Jacksonville, Florida. Both were stopped at a red light and had been traveling in the rightmost lane.

   d. Ms. Rentz's vehicle hit Mr. Triolo's vehicle on Old St. Augustine Road near the intersection of Lorretto Road.

   e. The speed limit at the location of the accident was 35 miles per hour.

   f. At the time of the accident, Mr. Triolo's vehicle was stopped.

      g.      The accident was reported to law enforcement at 1:08 p.m. M.L. Chase, Badge # 5594, Jacksonville Sheriff's Office, arrived on the scene at 1:25 p.m. and cleared the scene at 1:46 p.m.

      h.      Ms. Rentz and Mr. Triolo both remained at the scene until Officer Chase arrived.

      i.      Other individuals who came to the scene included Plaintiff's brother and United States Postal Service employees Jeanette L. Sigouin and Crystal Y. Thomas.

      j.      At the time of the accident, Ms. Rentz was acting within the course and scope of her federal employment with the United States Postal Service.

      k.      State Farm presented an administrative claim to the Postal Service for property damage to the Ford Mustang in the amount of $1,136.61. State Farm's claim was settled administratively for $1,136.61.

      l.      Richard Triolo's medical providers received $8,300.48 from State Farm under his Personal Injury Protection (PIP) coverage.

      m.      Richard Triolo presented an administrative claim to the Postal Service for property damage and personal injury in the amount of $1,505,650. Said claim was received by the Postal Service on November 6, 2017. The Postal Service denied Mr. Triolo's claim on May 22, 2018.

      n.      Richard Triolo has exhausted his administrative remedies.

      o.      Richard Triolo's date of birth is ▇▇▇▇, 1974.

      p.      The parties stipulate to the authenticity of the documents and other items listed on the joint exhibit list.

      q.      The parties stipulate to the authenticity of the documents and other items listed on each party's exhibit list, except as specifically noted.

10. **Applicable principles of law on which there is agreement**

      a.      This case is governed by the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b) and 2671-2680.

      b.      Venue is proper in the Middle District of Florida because the Plaintiff resides in this District and because the accident that is the subject of this litigation occurred in this District.

      c.      Under the FTCA, the United States has waived sovereign immunity in limited circumstances for claims for money damages for injury arising or resulting from the negligent or wrongful act or omission of a federal employee acting within the scope of his/her office or employment. See 28 U.S.C. § 1346(b)(1); U.S.C. § 2679(b)(1).

      d.      Under the FTCA, the Defendant, the United States, can only be held liable in tort in the same extent as a private individual under like circumstances. *See* 28 U.S.C. § 2674.

      e.      Under the FTCA, this action shall be tried by the Court without a jury. *See* 28 U.S.C. § 2402.

      f.      Liability, causation, and the types of damages Plaintiff can claim in this matter are determined by applying the substantive provisions of Florida tort law. See 28 U.S.C. § 2674.

      g.      Pursuant to 28 U.S.C. § 2675(b), Plaintiff's recovery may not exceed the sum certain set forth in his administrative claim.

      h.      Defendant is entitled to the application of the Florida Motor Vehicle No Fault Law, Fla. Stat. § 627.736(3). Thus, the PIP benefits that Plaintiff received must be set off against any recovery to the Plaintiff, and Plaintiff cannot receive an award of non-economic damages unless he proves that he sustained a permanent injury as a result of the motor vehicle accident in issue.

      i.      Plaintiff cannot recover any additional amount for property damages, as such was settled administratively.

11.    **Issues of fact which remain to be litigated**

      a.      Whether there was negligence on the part of Marsha Rentz and, if so, was it the legal cause of the losses, damages, or injuries claimed in this case.

      b.      Whether there was negligence on the part of Plaintiff and, if so, was it the legal cause of the losses, damages, or injuries claimed in this case.

      c.      The proportionate share of each party's comparative fault, if any.

      d.      Whether Plaintiff sustained an injury or injuries as a result of the motor vehicle accident.

      e.      Whether Plaintiff sustained a permanent injury or injuries as a result of the motor vehicle accident.

      f.      Whether Plaintiff failed to mitigate his damages.

      g.      The amount of, and reasonableness of, Plaintiff's compensatory and non-economic damages, if any.

      h.      The amount of collateral source set-off entitlement to Defendant, if any.

12. **Issues of law which remain for determination by the Court**

      a.      Any objections to the Parties' exhibits.

      b.      The appropriate scope of testimony permitted for Plaintiff's non-retained expert witnesses and whether their opinions are admissible under *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993).

13. **Disagreement as to application of the Federal Rules of Civil Procedure or the Federal Rules of Evidence**

      a.      None

14. **Motions or other matters which require Court action**

      a.      Plaintiff's Motion to Take Videotaped Trial Deposition Testimony of Non-Retained Treating Doctors Topp and Sooudi pursuant to Rule 32(a)(4)(B), F.R.C.P

      b.      The Parties expect that the trial will last approximately two days.

Respectfully submitted this 17th day of August, 2020.

FOR PLAINTIFF

KINNEY & MOORE

*/s/Benjamin C. Moore*
BENJAMIN C. MOORE
Florida Bar No. 773581
Philip S. Kinney, Esq.
Fla. Bar No.: 0709611
Kinney & Moore, PLLC
9191 R.G. Skinner Pkwy., Suite 703
Jacksonville, Florida 32256
Tel: (904) 642-4111
Fax: (904) 329-1875
E-mail: Ben@JaxLitigation.com
E-mail: Philip@JaxLitigation.com

FOR DEFENDANT

MARIA CHAPA LOPEZ
United States Attorney

*/s/ Collette B. Cunningham*
COLLETTE B. CUNNINGHAM
Assistant United States Attorney
Florida Bar No. 0012737
300 North Hogan Street, Suite 700
Jacksonville, FL 32202-4270
Telephone: (904) 301-6300
Facsimile: (904) 301-6240
Collette.Cunningham@usdoj.gov