UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICHARD A. TRIOLO,

        Plaintiff,

v.                                        Case No. 3:18-cv-919-J-34JBT

UNITED STATES OF AMERICA,

        Defendant.
_____/

## UNITED STATES OF AMERCIA'S TRIAL BRIEF

### I.    PROPOSED FINDINGS OF FACT

1.    This action arises out of a minor motor vehicle accident that occurred in Jacksonville, Florida on Saturday, February 11, 2017, at approximately 1:00 pm.

2.    Plaintiff Richard Triolo and United States Postal Service employee Marsha Rentz were at a complete stop at a red light at the intersection of Loretto Road and Old St. Augustine Road. Triolo was in the vehicle ahead of Rentz. Triolo was driving a 2016 Ford Mustang. Ms. Rentz was driving a mail truck (a 1992 Grumman LLV).

3.    The light turned green and Ms. Rentz's foot came off the brake pedal but she did not put her foot on the gas. The mail truck moved forward and the front bumper of the mail truck hit the rear bumper of the Mustang. The Mustang's bumper was damaged. There was minimal damage to the mail truck.

4.      The vehicles pulled into a nearby parking lot and Ms. Rentz called Postal Service supervisor Jeanette Sigouin. Ms. Rentz asked Plaintiff if he was okay and he replied that he was.

5.      One of Plaintiff's brothers, Brian Shmucker, came to the scene. Mr. Shmucker asked Ms. Rentz if she was okay and she said yes.

6.      Ms. Sigouin and Postal Service manager Crystal Y. Thomas came to the scene. These individuals asked Plaintiff if he was okay and he said that he was. Plaintiff did not report to them that he was injured or experiencing pain.

7.      A law enforcement officer also came to the scene. No ambulance was called.

8.      Plaintiff presented to the Emergency Department at Baptist Primary Care Black Creek South at 2:46 p.m. He reported being rear-ended at moderate speed and he complained of neck and lower back pain. The physical exam revealed that his back was non-tender with normal range of motion and normal alignment. His neck was tender to palpation. He underwent a CT scan of the cervical spine, which did not show any acute injuries. He was given Tylenol 650 mg and a prescription for eight Lortab 5/325 mg (one every 6 hours for 2 days), and was discharged at 4:14 p.m.

9.      At some point prior to February 16, 2017, Mr. Triolo retained an attorney.

10.     On February 16, 2017, Mr. Triolo began treating with Chiropractor Michael McDaniels, at Jacksonville Sport & Spine. Plaintiff reported that his vehicle was struck in the rear by a mail truck travelling at approximately 30-40 mph. He reported pain in his neck, upper back, and lower back, as well as pain into his lower right glute and

2

lower right hamstring, among other issues. Plaintiff treated with Jacksonville Sport & Spine until July 20, 2017. This treatment was covered by Plaintiff's Personal Injury Protection (PIP) coverage.

11.    Dr. McDaniels referred Plaintiff to neurologist Dr. Syed Asad, at Universal Neurological Care. Plaintiff treated with Universal Neurological Care from March 16, 2017 to May 25, 2017.

12.    Dr. Asad ordered a MRI of the lumbar spine that was performed at the Baymeadows MRI on April 4, 2017 and read by radiologist Dr. Soheil Sooudi. The radiology report indicates, in addition to other findings, that Plaintiff had a bilateral L5 spondylolysis with a grade 1 spondylolisthesis at the L5-S1 level. In spondylolysis, a crack or stress fracture develops through the pars interarticularis, which is a small, thin portion of the vertebra that connects the upper and lower facet joints. In spondylolisthesis, the fractured pars interarticularis separates, allowing the injured vertebra to shift or slip forward on the vertebra directly below it.

13.    On May 25, 2017, a practitioner at Universal Neurological Care referred Plaintiff to see pain management physician Dr. Scott Kramarich, at Riverside Pain Physicians, and neurosurgeon Dr. Andrew Cannestra, at Lyerly Neurosurgery.

14.    On July 11, 2017, Plaintiff began seeing Dr. Reynaldo Pardo, at St. Joseph Interventional Pain Specialists. Plaintiff continues treating with Dr. Pardo to the present. In July and August 2017, Dr. Pardo administered one lumbar epidural steroid injection, one prognostic medial branch nerve block, and one transforaminal steroid injection, in addition to prescribing narcotics.

15.    Dr. Pardo referred Plaintiff to see Dr. Constantine Toumbis, an orthopedic spine surgeon with the Orange Park Spine Institute. Plaintiff saw Dr. Toumbis once, on October 20, 2017.

16.    On November 8, 2017, Plaintiff had an orthopedic spine consultation with Dr. Raymond Topp, with Topp Spine & Orthopaedics. On March 22, 2018, Dr. Topp performed a minimally invasive transforaminal lumbar interbody fusion at L5-S1, along with related procedures at L5-S1. Plaintiff treated with Dr. Topp briefly after his surgery but has not seen him since September 13, 2018.

17.    Plaintiff asserts that the February 11, 2017 motor vehicle accident caused permanent injuries to his lumbar spine. His cervical and middle back complaints have resolved.

18.    Since the accident, with the exception of the two months following his surgery, Plaintiff has worked as a Reparatory Therapist full-time at Baptist Medical Center South and on a regular basis at the Orange Park Medical Center.

19.    Since the date of the accident, Plaintiff has had health insurance through BlueCross/Blue Shield. While he utilized his health insurance for some of the medical care he has received, Plaintiff also signed letters of protection with several providers, including Dr. Pardo and Dr. Topp. As a result, none of Plaintiff's pain management treatment has been submitted to health insurance for payment, although approximately two treatments were covered by PIP. Similarly, while the anesthesiology services for Plaintiff's surgery were submitted to his health insurance, the amount was subsequently

refunded, and the surgeon's fee, facility fee, and other associated items have not been submitted to insurance for payment.

20.     On June 28, 2017, the Postal Service issued payment in the amount of $1,136.61 to State Farm for the property damage to Plaintiff's vehicle, which included Plaintiff's deductible.

## II.     PROPOSED CONCLUSIONS OF LAW

21.     This Court has subject matter jurisdiction of this matter pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Pursuant to the FTCA, the United States can be held liable in tort in the same manner and only to the same extent as a private individual under like circumstances. 28 U.S.C. § 2674. In considering claims brought under the FTCA, the Court applies the substantive law of the place where the claim arose. *See* 28 U.S.C. § 2674. The substantive law of the State of Florida is applicable in this case.

22.     Federal law governs privilege determinations in FTCA actions. *Twin City Fire Ins. Co. v. United States*, No. 8:15-cv-441-T-33AEP, 2015 WL 12859430, *1 (M.D. Fla. Oct. 8, 2015).

23.     To sustain a negligence cause of action under Florida law, Plaintiff bears the burden to prove, by the greater weight of the evidence, all four elements of negligence: duty, breach, causation, and damages. *Jeffries v. Amery Leasing, Inc.*, 698 So.2d 368, 370-71 (Fla. 5th DCA 1997); *see also Gonzalez v. United States*, No. 3:14-cv-419-J-34JBT, 2017 WL 1756476, *1 (M.D. Fla. May 5, 2017) (same).

24.     A finding of negligence, does not establish a right of recovery by Plaintiff unless Plaintiff can show causation and damages. *See Jeffries*, 698 So. 2d. at 3710-71; *see*

*also Gooding v. University Hospital Bldg., Inc.*, 445 So.2d. 1015, 1018 (Fla. 1984) (concluding that a failure to establish causation bars recovery).

25.    Under Florida law, Plaintiff must "prove by a preponderance of evidence, with 'reasonable medical probability,' that [Defendant's] alleged negligence was the proximate cause of [Plaintiff's] injuries." *Wolicki-Gables v. Arrow Int'l, Inc.*, 641 F. Supp. 2d 1270, 1287 (M.D. Fla. 2009), *aff'd*, 634 F.3d 1296 (11th Cir. 2011). Because Plaintiff's alleged injuries are beyond the common experience of the trier of fact, expert witness testimony is required to establish causation. *Greene v. Flewelling*, 366 So.2d 777, 780 (Fla. 2d DCA 1979). "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Gooding*, 445 So.2d. at 1018.

26.    Stating that a symptom is "consistent with" traumatic causes is little more than saying it is possible that it has traumatic causes. Indeed, not only does expert testimony stating an injury is "consistent with" a traumatic injury fall far short of the *Gooding* standard, it is insufficiently plausible at the earliest stages of the case. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.").

27.    "As the fact-finder, the Court 'is free to determine the reliability and credibility of expert opinions and, if conflicting, to weigh them as the finder sees fit.'" *Gonzalez*, 2017 WL 1756476, *8 (quoting *Dep't of Ag. & Consumer Servs. v. Bogorff*, 35 So. 3d

84, 88 (Fla. 4th DCA 2010)); *see also* Fla. Std. Jury Instr. (Civ.) 601.2b ("You may accept such [expert] opinion testimony, reject it, or give it the weight you think it deserves, considering the knowledge, skill, experience, training, or education of the witness, the reasons given by the witness for the opinion expressed, and all the other evidence in the case.").

28.    A fact-finder's decision to reject expert testimony "must be founded on some reasonable basis in the evidence." *See Boyles v. A&G Concrete Pools, Inc.*, 149 So. 3d 39, 48 (Fla. 4th DCA 2014). Such a basis for rejecting expert testimony can include, for example: "conflicting medical evidence; evidence that impeaches the credibility or basis for an expert's opinion; the lack of candor of the plaintiff in disclosing prior accidents, prior medical treatment, and prior or subsequent similar injuries; conflicting lay testimony or evidence that disputes the injury claim; or the plaintiff's overall credibility relating to conflicting statements regarding the alleged injury." *Id*. A trial judge may reject even unrebutted expert testimony with an accompanying reasonable explanation. *Rementer v. United States*, No. 8:14-cv-642-T-17MAP, 2017 WL 1095054, *19 (M.D. Fla. Mar. 21, 2017).

29.    If a party wishes to present expert testimony from a witness who is not retained or specially employed to provide expert testimony, the party must provide a disclosure that states: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." See Fed. R. Civ. P. 26(a)(2)(C). This provision was added to Rule 26 when it was amended in December 2010. See

Advisory Committee Notes, Rule 26(a)(2)(C) (December 2010). While the required disclosure is "less extensive than the report required by Rule 26(a)(2)(B)," it should include the opinions to be offered by the expert witnesses and "the facts supporting those opinions." *Id*. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1).

30.     With respect to a treating physician or healthcare provider disclosed pursuant to Fed. R. Civ. P. 26(a)(2)(C), such testimony typically is limited "to matters within the scope of observation, diagnosis, and treatment." *Muzaffarr v. Ross Dress for Less, Inc.*, No. 12-61996-Civ., 2013 WL 3850848, at *1 (S.D. Fla. July 26, 2013) (citing *In re Denture Cream Prod. Liability Litig.*, No. 09-2051-MD, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012) and *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317 (11th Cir. 2011)). The opinions offered by Plaintiff's non-retained physicians thus should be limited to those opinions developed during their treatment of Plaintiff, based on their personal observations of Plaintiff, and necessary to Plaintiff's treatment.

31.     Fed. R. Civ. P. 26(a)(2)(C) witnesses may not testify to opinions developed for the purpose of litigation and thus any such opinions should be excluded. *See, e.g., In re Denture Cream Prod. Liability Litig.*, 2012 WL 5199597, at *4 (holding that treating physicians offering opinions beyond those arising from treatment—including opinions formed in anticipation of litigation—are experts from whom full Rule 26(a)(2)(B) reports are required).

32.    The current version of Fed. R. Civ. P. 26 makes clear that if a treating physician is presenting evidence under Federal Rule of Evidence 702, 703, or 705, that physician is offering expert testimony, not lay testimony. *See* Fed. R. Civ. P. 26(a)(2)(A) and (C)(i); *see also* Fed. R. Evid. 701(c) (limiting opinion testimony of a lay witness to that "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702").[1]

33.    The admissibility of opinion testimony of expert witnesses is governed by Rule 702 of the Federal Rules of Evidence, which provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), explained that Rule 702 requires the trial court to act as a gatekeeper to ensure that any and all scientific testimony or

---

[1] Cases that pre-date the December 2010 amendments to Rule 26 (and subsequent citing cases) frequently discuss treating physicians testifying as "lay" witnesses. Before the December 2010 amendments, there was only one type of expert: the type that required an expert report. As a result, courts had a tendency to conclude that treating physicians were not testifying as expert witnesses, because only then were they permitted to testify without a report. The resulting difficulties are part of what led to the creation of Rule 26(a)(2)(C). *See, e.g.*, Civil Rules Advisory Committee, Minutes, April 2007, pp. 29-30, available at http://www.uscourts.gov/rulespolicies/ archives/meeting-minutes/advisory-committee-rules-civil-procedure-april-2007

evidence admitted is not only relevant, but reliable. *Daubert,* 509 U.S. at 589. The party presenting or offering the expert testimony bears the burden of establishing the expert's qualification and reliability and helpfulness of such opinions. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005).

34.     Guided by Daubert and other Supreme Court decisions, the Eleventh Circuit has established a three-pong test to determine the admissibility of expert testimony: "To fulfill their obligation under Daubert, district courts must engage in a rigorous inquiry to determine whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

35.     When the district court is the trier of fact, "the district court may allow challenged expert testimony to be presented and then later determine issues of admissibility and reliability." *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, 616 F. Supp. 2d 1250, 1256 (M.D. Fla. 2009).

36.     As the trier of fact in this case, the Court may make judgments regarding the credibility of the witnesses that come before it. *See Caro–Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1504 (11th Cir.1993) (*citing Chris Berg, Inc. v. Acme Mining Co.*, 893 F.2d 1235, 1238 n. 2 (11th Cir.1990) (recognizing that the court must weigh the evidence and make credibility determinations)). A witness's testimony may be believed in full, in

part, or entirely discounted. *See Moore v. Chesapeake & Ohio Ry. Co.*, 340 U.S. 573, 576, 71 (1951).

37.    A letter of protection is signed when a provider agrees not to bill or collect from a patient while a suit is pending in exchange for the plaintiff agreeing to pay the provider out of an eventual recovery. "Florida courts have recognized that such letters of protection give a treating physician a 'financial interest in the outcome' of the litigation because a doctor's compensation can increase if he testifies favorably for the plaintiff." *Ledbetter v. United States*, 8:17-cv-00646, doc. 63 at 17 (M.D. Fla. Sep. 30, 2019) (citing *Carnival Corp. v. Jimenez*, 112 So. 3d 513, 520 (Fla. 2d DCA 2013)); *see also Worley v. Central Florida Young Men's Christian Ass'n*, 228 So. 3d 18, 23 (Fla. 2017) ("[B]ias on the part of the treating physician can be established by providing evidence of a letter of protection (LOP), which may demonstrate that the physician has an interest in the outcome of the litigation.").

38.    When considering a Plaintiff's course of treatment, "[i]t is well settled that failure to follow medical advice may constitute comparative negligence on the part of the plaintiff." *Healthsouth Sports Medicine and Rehab. Center of Boca Raton, Inc., v. Roark*, 723 So. 2d 314, 315 (Fla. 4th DCA 1998); *Nordt v. Wenck,* 653 So.2d 450 (Fla. 3d DCA 1995) (finding that the defendant appropriately raised the issue of comparative negligence by asserting the plaintiff failed to follow her physician's instructions.). If plaintiff's injuries are in part attributable to his comparative fault, that fault "diminishes proportionately the amount awarded as economic and noneconomic damages." Fla. Stat. § 768.81(2).

39.     Here, Defendant disputes whether the motor vehicle accident was the proximate cause of Plaintiff's injuries. The Court finds that Plaintiff failed to establish by the greater weight of the evidence that he sustained any permanent injuries as a result of the accident. At most, Plaintiff sustained temporary injuries that resolved.

**With respect to any award of economic damages**

40.     "It is well established that the plaintiff in a personal injury suit has the burden to prove the reasonableness and necessity of medical expenses." *Albertson's, Inc. v. Brady*, 475 So.2d 986, 988 (Fla. 2d DCA 1985). "Although some jurisdictions consider evidence of the amount of a medical bill to be sufficient proof of reasonableness, many, including Florida, require something more." *Id*.

41.     Plaintiff's obligation is "not to pay whatever the provider demands, but only a reasonable amount." *A.J. v. State*, 677 So. 2d 935, 937 (Fla. 4th DCA 1996). Discounts associated with Medicare or Medicaid billing restrictions, discounts associated with insurance contracts, the usual and customary rates charged and payments received for these services, and what other similar medical providers in the relevant market charge for similar services are necessary factors to the analysis of whether a medical provider's charges are reasonable. *Lawton-Davis v. State Farm Mutual Auto. Ins. Co.*, Case No. 6:14-cv-1157-Orl-37DAB, 2016 WL 1383015, at *2 (M.D. Fla. Apr. 7, 2016).

42.     In the context of the PIP statute, the Florida Legislature has defined a reasonable charge for medical services rendered for persons injured in automobile accidents to be no more than 200 percent of the allowable charges under Medicare Parts A and B. *See* Fla. Stat. § 627.736(5). "Medical bills that are higher than normal can be

presented to dispute the physician's testimony regarding the necessity of treatment and the appropriate amount of damages." *Worley,* 228 So. 3d at 24.

43.    Also, the Court must reduce any award to the amount for which the plaintiff is actually liable to his or her medical provider or providers after any such provider reduces its bill by the amount received from the plaintiff's PIP insurer, the amount of any contractual discounts, and any write-offs or write-downs of the provider's bill. *Green v. United States*, No. 6:11-cv-1774-Orl-18KRS, 2013 WL 6145530, *3 (M.D. Fla. Nov. 21, 2013) (citing Fla. Stat. § 768.76 and *Goble v. Forhman*, 901 So.2d 830, 832 (Fla. 2005)).

44.    With respect to future medical expenses, there must be evidence in the record from which a fact finder can determine the amount of future medical expenses that are reasonably certain to be incurred. *See, e.g.*, *Walt Disney Co. v. Blalock*, 640 So.2d 1156, 1159 (Fla. 5th DCA 1994). It is Plaintiff's burden to establish that future medical expenses will, more probably than not, be incurred. *Kloster Cruise Ltd. v. Grubbs,* 762 So.2d 552, 556 (Fla. 3d DCA 2000). "That burden may only be met with competent substantial evidence." *Id.* Indeed, there must be "evidence in the record from which the [fact finder] could, with reasonable certainty, determine the amount of medical expense [plaintiff] would be likely to incur in the future." *DeAlmeida v. Graham,* 524 So.2d 666, 668 (Fla. 4th DCA 1987). "Some direct evidence of anticipated future medical expense is essential to a recovery because the amount of past medical expenses incurred does not—at least by itself—provide a reasonable basis for a jury to compute future medical expenses." *Volusia Cty. v. Joynt*, 179 So. 3d 448, 452 (Fla. 5th DCA 2015) (citing *DeAlmeida,* 524 So.2d at 668). Plaintiff has not proven entitlement to future medical expenses here.

45.     Unless a plaintiff has suffered permanent injury within a reasonable degree of medical probability, he or she may not recover noneconomic damages for pain and suffering or mental anguish. *Green*, 2013 WL 6145530, *3 (citing Fla. Stat. § 627.737(2)(b)). Because Plaintiff was not permanently injured in the subject accident, Plaintiff may not recover noneconomic damages such as "pain, suffering, mental anguish, and inconvenience because of bodily injury, sickness, or disease." *See* Fla Stat. § 627.737(2).

Dated this 15th day of September, 2020.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

*/s/Collette B. Cunningham*
COLLETTE B. CUNNINGHAM
Assistant United States Attorney
Florida Bar No. 0012737
KYESHA MAPP
Assistant United States Attorney
Florida Bar No. 0113006
Bryan Simpson U.S. Courthouse
300 North Hogan Street, Suite 700
Jacksonville, FL 32202-4270
Telephone No. (904) 301-6326/6310
Facsimile No. (904) 301-6310
Collette.Cunningham@usdoj.gov
Kyesha.Mapp@usdoj.gov
Attorneys for Defendant

cc:    Conny Davinroy Beatty, Esq.
       USPS National Tort Center
       United States Postal Service
       1720 Market Street, Room 2400
       St. Louis, MO 63155-9948

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 15, 2020, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participants:

Kinney & Moore, PLLC
Philip S. Kinney, Esq.
Benjamin C. Moore, Esq.
9191 R.G. Skinner Pkwy., Suite 703
Jacksonville, Florida 32256

*/s/Collette B. Cunningham*
COLLETTE B. CUNNINGHAM
Assistant United States Attorney

15